1  RODGER R. COLE (CSB No. 178865)
   rcole@fenwick.com
2  JENNIFER L. KELLY (CSB No. 193416)
   jkelly@fenwick.com
3  FENWICK & WEST LLP
   Silicon Valley Center
4  801 California Street
   Mountain View, CA  94041
5  Telephone:     650.988.8500
   Facsimile:     650.938.5200
6
   Attorneys for Defendants
7  SEGA OF AMERICA, INC. and
   GEARBOX SOFTWARE, L.L.C.
8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13 DAMION PERRINE, individually and on behalf        Case No. 3:13-cv-01962-MEJ
   of a class of similarly situated persons,
14                                                    CLASS ACTION
            Plaintiff,                                _____
15                                                    NOTICE OF MOTION AND MOTION
       v.                                             TO DISMISS COMPLAINT BY
16                                                    DEFENDANTS SEGA OF AMERICA,
   SEGA OF AMERICA, INC., a California                INC. AND GEARBOX SOFTWARE,
17 corporation, and GEARBOX SOFTWARE,                 L.L.C.; MEMORANDUM OF POINTS
   L.L.C., a Texas limited liability company,        AND AUTHORITIES IN SUPPORT
18                                                    THEREOF
            Defendants.
19                                                    Date: August 1, 2013
                                                      Time: 10 a.m.
20                                                    Courtroom: B, 15th Floor
                                                      Magistrate Judge:    Maria-Elena James
21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................... 1

ISSUES TO BE DECIDED ............................................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 3

INTRODUCTION ............................................................................................................. 3

ALLEGED FACTS ........................................................................................................... 4

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT .................................................................................................................... 6

I.      PLAINTIFF'S UCL, CLRA AND FAL CLAIMS FAIL AS A MATTER OF
        LAW................................................................................................................... 6

        A.      Plaintiff, a Pennsylvania citizen, cannot avail himself of California's
                consumer protection laws for injuries allegedly suffered in
                Pennsylvania. ......................................................................................... 6

        B.      Plaintiff lacks standing under CLRA, UCL and FAL because his
                alleged reliance was not reasonable. ................................................... 10

        C.      Plaintiff has not pled a violation of the CLRA, FAL, or UCL............................. 11

II.     PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS
        WARRANTY....................................................................................................... 17

III.    PLAINTIFF FAILS TO STATE CLAIMS FOR FRAUDULENT
        INDUCEMENT OR NEGLIGENT MISREPRESENTATION. ...................... 18

CONCLUSION................................................................................................................ 20

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

C<small>ASES</small>

*Ashcroft v. Iqbal*,
    129 S. Ct.1937 (2009) .......................................................................................................... 3

*Baltazar v. Apple, Inc.*,
    No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 13187
    (N.D. Cal. Feb. 10, 2011) ............................................................................................. 10, 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 3

*Blennis v. Hewlett-Packard Co.*,
    No. C 07-00333 JF, 2008 WL 818526 (N.D. Cal. Mar. 25, 2008) ...................................... 15

*Chang v. McKesson HBOC, Inc.*,
    No. C07-03981 MJJ, 2007 WL 4463002 (N.D. Cal. Dec. 17, 2007) ..................................... 3

*Cullen v. Netflix*,
    No. 5:11-cv-01199-EJD, 2013 U.S. Dist. LEXIS 4246
    (N.D. Cal., January 10, 2013) ............................................................................................. 9

*Debbs v. Chrysler Corp.*,
    810 A.2d 137 (Pa. Super. 2002) .......................................................................................... 6

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................................... 14, 15

*Edmunson v. P&G Co.*,
    No. 10-cv-2256-IEG, 2011 U.S. Dist. LEXIS 53221
    (S.D. Cal. May 17, 2011) ................................................................................................... 10

*Elias v. Hewlett-Packard Co.*,
    No. 12-cv-00421-LHK, 2012 U.S. Dist. LEXIS 146811
    (N.D. Cal. Oct. 11, 2012) .............................................................................................. 13, 15

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................................................................. 8

*Frezza v. Google, Inc.*,
    No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462
    (N.D. Cal. April 22, 2013) ....................................................................................... 4, 5, 6, 7

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
    352 F.3d 367 (9th Cir. 2003) .............................................................................................. 17

*Glen K. Jackson, Inc. v. Roe*,
    273 F.3d 1192 (9th Cir. 2001) ............................................................................................ 17

F<small>ENWICK</small> & W<small>EST</small> LLP
A<small>TTORNEYS AT LAW</small>
M<small>OUNTAIN VIEW</small>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Granfield v. Nvidia Corp.*,
No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678
(N.D. Cal. July 11, 2012) ............................................................................... 5

*Hernandez v. Burger*,
102 Cal. App. 3d 795 (1980) ........................................................................... 7

*Herrington v. Johnson & Johnson Consumer Cos.*,
No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ...................... 10

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*,
No. 3:11-cv-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215
(S.D. Cal. Feb. 13, 2012) ............................................................................. 5, 6

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) (en banc) .......................................................... 11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
2012 U.S. Dist. LEXIS 146971 (S.D. Cal. Oct. 11, 2012) ................................. 5

*In Re Sony Grand Wega KDF-E A10/A20
Series Rear Projection HDTV Television Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010) ................................................. 11, 12, 14

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir.1994) ........................................................................... 9

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................... 9, 10, 11

*Lazar v. Superior Court*,
12 Cal. 4th 631 (1996) ................................................................................ 16

*Littlehale v. Hain Celestial Grp., Inc.*,
No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530
(N.D. Cal. July 2, 2012) ............................................................................. 5, 6

*Maxwell v. Unilever United States, Inc.*,
No. 5:12-cv-01736-EJD, 2013 U.S. Dist. LEXIS 51195
(N.D. Cal. Apr. 9, 2013) .............................................................................. 11

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ................................................................. 4, 5, 6, 7

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68 (2010) .................................................................................... 7

*Miller v. Cont'l Airlines, Inc.*,
260 F. Supp. 2d 931 (N.D. Cal. 2003) ............................................................. 3

*Neilson v. Union Bank of Cal., N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................................... 16

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................. 12, 13, 14, 17

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n,*
  494 F.3d 788 (9th Cir. 2007) ................................................................... 3

*Pirozzi v. Apple Inc.,*
  No. 12-CV-01529 YGR, 2012 WL 6652453 (N.D. Cal. Dec. 20, 2012) .............. 10

*Robinson Helicopter Co., Inc. v. Dana Corp.,*
  34 Cal. 4th 979 (2004) ............................................................................. 16

*Sanders v. Apple Inc.,*
  672 F.Supp.2d 978 (N.D. Cal. 2009) ........................................................... 15

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.,*
  88 F.3d 780 (9th Cir. 1996) ........................................................................ 3

*Stearns v. Select Comfort Retail Corp.,*
  No. 08-2746-JF, 2009 U.S. Dist LEXIS 48367 (N.D. Cal. June 5, 2009) ...... 16, 17

*Stickrath v. Globalstar, Inc.,*
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ......................................................... 9

*Tayag v. Nat'l City Bank,*
  No. C 09-667 SBA, 2009 WL 943897, at *2
  (N.D. Cal. Apr. 7, 2009) ..................................................................... 9, 11

*Tietsworth v. Sears RoeBuck & Co.,*
  No. 5:-09-cv-00288 JF, 2009 U.S. Dist. LEXIS 98532
  (N.D. Cal. Oct. 13, 2009) ......................................................................... 12

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) .................................................................... 9

*Waller v. Hewlett-Packard Co.,*
  No. 11-cv-0454-LAB, 2012 U.S. Dist. LEXIS 77366
  (S.D. Cal. June 1, 2012) ........................................................................... 5

*Williams v. Gerber Prods. Co.,*
  552 F.3d 934 (9th Cir. 2008) ..................................................................... 13

*Williamson v. Reinalt-Thomas Corp.,*
  No. 5:11-cv-03548-LHK, 2012 U.S. Dist. LEXIS 58639
  (N.D. Cal. Apr. 25, 2012) .......................................................................... 8

*Woods v. Google, Inc.,*
  889 F. Supp. 2d 1182 (N.D. Cal. 2012) ....................................................... 8

*Worley v. Avanquest North Am., Inc.,*
  No. C 12-04391 SI, 2013 U.S. Dist. LEXIS 16239 (N.D. Cal. Feb. 5, 2013) .... 16, 17

*Zinn v. Ex-Cell-O Corp.,*
  148 Cal. App. 2d 56 (1957) ........................................................................ 7

**STATUTES**

Cal. Bus. & Prof. Code § 17203 ................................................................... 6

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Cal. Bus. & Prof. Code § 17535 ................................................................................ 6

Cal. Civ. Code § 1780(a) ......................................................................................... 6

Cal. Com. Code § 2313 .......................................................................................... 15

Pennsylvania Unfair Trade Practices and Consumer Protection Law,
    73 Pa. Cons. Stat § 201-9.2 (a) (2013) ................................................................ 6

**RULES**

Federal Rule of Civil Procedure 9(b) ............................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 3

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2     **PLEASE TAKE NOTICE** that on August 1, 2013, at 10 a.m., or as soon thereafter as

3     available, in the courtroom of Magistrate Judge Maria-Elena James, located at 450 Golden Gate

4     Avenue, California 94102, Courtroom B, 15th Floor, defendants Sega of America, Inc. and

5     Gearbox Software, L.L.C. ("Defendants") will and hereby do move to dismiss each claim for

6     relief asserted in the Class Action Complaint (the "Complaint") filed in this action by Plaintiff

7     Damion Perrine for lack of standing and pursuant to Federal Rule of Civil Procedure 12(b)(6) due

8     to plaintiff's failure to state a claim upon which relief may be granted.

9     Defendants move on the following grounds:

10    (1)    <u>CLRA, UCL, FAL.</u>  Plaintiff, a citizen of Pennsylvania, does not have standing to

11           assert a claim under the California Consumer Legal Remedies Act ("CLRA"), the

12           Unfair Competition Law ("UCL"), and the False Advertising Law ("FAL")

13           (collectively, the "California Consumer Protection Laws") for his injury allegedly

14           suffered in Pennsylvania.  In addition, Plaintiff lacks standing as his alleged

15           reliance was not reasonable as a matter of law.  Finally, Plaintiff's claims should

16           be dismissed for failure to plead fraud with the specificity required by Federal

17           Rule of Civil Procedure 9(b) and for failure to state a claim under Rule 12(b)(6).

18    (2)    <u>Breach of Express Warranty.</u>  Plaintiff fails to allege the terms of the supposed

19           warranty.

20    (3)    <u>Fraudulent Inducement.</u>  Plaintiff's fraudulent inducement claim fails to plead

21           fraud with the specificity required by Federal Rule of Civil Procedure 9(b),

22           including his failure to identify when he heard the alleged misrepresentation, what

23           it contained, or what in it was material to his decision to purchase the video game.

24           Plaintiff also fails to plead knowledge of falsity and reasonable reliance.

25    (4)    <u>Negligent Misrepresentation.</u>  Plaintiff's negligent misrepresentation claim fails to

26           plead fraud with the specificity required by Federal Rule of Civil Procedure 9(b),

27           including his failure to identify when he heard the alleged misrepresentation, what

28           it contained, or what in it was material to his decision to purchase Defendants'

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   video game.  Plaintiff also fails to plead reasonable reliance or that Defendants

2   lacked reasonable grounds for believing the alleged misrepresentation to be true.

3   This motion is based on this Notice of Motion and Motion, the Memorandum of Points

4   and Authorities filed concurrently herewith, Defendants' Request for Judicial Notice, the

5   Declaration of Steve Gibson in Support of Defendants' Request for Judicial Notice, the

6   arguments of counsel, and such other matters that properly may be received by the Court.

7   ## ISSUES TO BE DECIDED

8       1.    Whether Plaintiff, a citizen of Pennsylvania who was allegedly injured in

9   Pennsylvania, has standing to assert claims under the California Consumer Legal Remedies Act

10   ("CLRA"), the Unfair Competition Law ("UCL"), and the False Advertising Law ("FAL")

11   (collectively, the "California Consumer Protection Laws").

12       2.    Whether each of Plaintiff's claims has satisfied the heightened pleading

13   requirements of Federal Rule of Civil Procedure 9(b) where he has not specified when he heard

14   the alleged misrepresentation, what it contained, or what in it was material to his decision to

15   purchase the video game.

16       3.    Whether Plaintiff has sufficiently pled a claim under the California Consumer

17   Protection Laws despite pleading no specific representations, other than mere non-actionable

18   appearance of the product, shown two years before the product was released.

19       4.    Whether Plaintiff can allege a breach of an express warranty without identifying

20   any express warranty or his reliance thereon.

21       5.    Whether Plaintiff has sufficiently stated a claim upon which relief can be granted

22   for each claim asserted in the Complaint.

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

3   Disappointment in the quality of a video game does not create a federal claim.  Plaintiff

4   Perrine brings this lawsuit against Defendants Sega of America, Inc. and Gearbox Software, LLC

5   ("Defendants") asserting that the quality of the game he purchased in February 2013 was lower

6   than that of the preview he saw in June 2011.  But much like when a movie-goer gets excited by a

7   trailer only to leave the theatre unfulfilled, Plaintiff Perrine's unfulfilled expectations are not

8   actionable.

9   In June 2011, Gearbox President Randy Pitchford presented at E3 – an annual videogame

10   conference in Los Angeles – about a game Gearbox was developing.  While Mr. Pitchford spoke

11   about the under-development game, Aliens: Colonial Marines ("ACM" or "Game"), Gearbox

12   employees played the Game as it existed in June 2011, and the actual gameplay of the Gearbox

13   employees was shown on the screen behind Mr. Pitchford.  The gameplay shown was marked

14   with the watermark "WORK IN PROGRESS."[1]  Not surprisingly, as the Game was a work in progress

15   and as development of the Game continued over the next twenty (20) months prior to the

16   February 2013 release, the Game changed.  But a change in the Game between Mr. Pitchford's

17   presentation in June 2011 and the Game's release in February 2013 does not mean that the "actual

18   gameplay" shown in June 2011 was false, let alone fraudulent.  The Game may not be critically

19   acclaimed or the most successful game developed by Gearbox and published by Sega, but much

20   like with the frustrated movie-goer, that does not mean that Plaintiff Perrine can state a viable

21   claim.[2]

22   [1] By definition, the gameplay shown was not the final product.  The definition of a "WORK IN
PROGRESS" is an incomplete and yet to be finished work.  For example, a "work in progress" is
23   defined as "work undertaken but not completed" (2 The New Shortened Oxford English
Dictionary 3718 (4th ed. 1993)), a "work with which an artist or writer is engaged but which is
24   not completed or approaching completion" (Merriam-Webster Online Dictionary, 2011,
http://www.merriamwebster.com (June 13, 2013)), "a yet incomplete artistic, theatrical or musical
25   work, often made available for public viewing or listening" (The American Heritage Dictionary
of the English Language (5th ed. 2011), http://www.ahdictionary.com (June 14, 2013). and "a
26   piece of work that is not yet finished." Dictionary.com (http://www.dictionary.com (June 13,
2011)).
27   [2] Plaintiff's Complaint ignores a fundamental fact that undermines all of his claims.  Plaintiff and
Sega entered into an End User License Agreement ("Agreement") when Plaintiff installed the
28   Game.  The Agreement granted Plaintiff a license to play the Game.  Plaintiff's Complaint does

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Plaintiff's claims are based on the theory that if an artist shows a work in progress, that

2    piece of work must be frozen in time and cannot change.  But fortunately for artists everywhere

3    that is not the law nor should it be.  Artists must be free to display partially completed works

4    without fear of frivolous claims of false advertising and fraud.  Defendants Sega and Gearbox ask

5    the Court to recognize the in-progress nature of the gameplay shown and dismiss Plaintiff's

6    complaint.

7                                   **ALLEGED FACTS**[3]

8    On December 11, 2006, Defendants announced the development of a video game entitled

9    Aliens: Colonial Marines to be released in 2009.  Compl. ¶ 19.  Plaintiff Damion Perrine, a

10   citizen of Pennsylvania (*id.* ¶ 7), learned that ACM was in development "sometime before its

11   initial scheduled release in 2009." *Id.* ¶ 52.  "At that time" he pre-ordered a copy at his local

12   GameStop store for $60 so he would receive the game on its day of release.  *Id.* ¶ 53.  Prior to the

13   Game's 2009 scheduled release, Plaintiff read industry articles detailing that ACM would be

14   delayed. *Id.* ¶ 54.  Concerned that the delay would cause Defendants to "rush" the Game, Plaintiff

15   cancelled his order and received a full refund.  *Id.* ¶ 55.

16   To promote the game while it was still in development, Defendants conducted an "actual

17   gameplay" demonstration of ACM, including live narration by Gearbox President, Randy

18   Pitchford, at the annual E3 video game conference in June 2011 (the "E3 2011 Trailer"). *Id.*

19   ¶¶ 21-23.  During the narration, Mr. Pitchford said "Today, we're going to show you a bit of the

20   game ... [Y]ou're going to see what the game *actually looks like.* Not just screenshots but the

21   *actual gameplay.*" *Id*. ¶ 23 (emphasis in Complaint).  A "WORK IN PROGRESS" watermark was

22   displayed on the Game during the demonstration.  *Id.* ¶ 24.

23

24

_____

25   not mention this binding Agreement.  If Plaintiff is ever able to state a claim – which Defendants
     do not believe to be likely – this matter will quickly be disposed of by the Agreement.  Among
26   other things, Plaintiff expressly agreed and understood that Sega made no guarantees as to the
     quality of the Game and that Plaintiff's sole remedy for dissatisfaction with the Game was to stop
27   playing it.
     [3] The following facts are taken from Plaintiff's Class Action Complaint ("Complaint") filed by
28   Plaintiff on April 29, 2013, and are assumed to be true for purposes of this motion only.

NOT. OF MOTION AND MOTION TO            4            CASE NO. 3:13-cv-01962-MEJ
DISMISS CLASS ACTION COMPLAINT

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Plaintiff pre-ordered the Game again "some time later" after seeing the E3 2011 Trailer

2   "[b]ecause it purported to demonstrate 'actual gameplay.'" *Id.* ¶ 57.  Plaintiff paid $5 down and

3   promised to pay the difference ($55) on launch day. *Id.* ¶ 56-57.  Plaintiff then viewed

4   "additional gameplay demonstrations" through 2012 – and, quite notably, Plaintiff does not

5   describe these "demonstrations" at all – and up to the Game's release which "convinced" him that

6   he would be satisfied with his purchase.  *Id.* ¶¶ 59-60.

7   ACM was released on February 12, 2013 and that day Plaintiff returned to his local

8   GameStop, paid the amount due, and received a copy of the game. *Id.* ¶¶ 31, 60.  Plaintiff

9   "immediately" noticed that the game "looked nothing like" the earlier demonstrations. *Id.* ¶ 61.

10  Nevertheless, Plaintiff "continued to play the game over the course" of the day and until "the end

11  of the day." *Id.* ¶ 62.[4]  Then, "unsatisfied with his purchase," Plaintiff sold his copy back to

12  GameStop for $17 that same day.  *Id.* ¶ 63.

13  Plaintiff seeks to represent a class of all persons in the U.S. who paid for a copy of the

14  Game either on or before February 12, 2013 – the date the Game was released.  *Id.* ¶ 66.

15  <u>**LEGAL STANDARD**</u>

16  Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) where a plaintiff

17  fails to allege facts sufficient to support a cognizable legal claim.  *See, e.g., SmileCare Dental*

18  *Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Chang v. McKesson*

19  *HBOC, Inc.*, No. C07-03981 MJJ, 2007 WL 4463002, at *2 (N.D. Cal. Dec. 17, 2007).  To plead

20  sufficient facts to state a claim, a complaint must suggest that the right to relief is more than

21  conceivable, but also plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

22  (2007).  Conclusory allegations are insufficient; federal pleading standards "are not so liberal as

23  to allow purely conclusory statements to suffice to state a claim that can survive a motion to

24  dismiss." *Miller v. Cont'l Airlines, Inc.*, 260 F. Supp. 2d 931, 935 (N.D. Cal. 2003); *Perfect 10,*

25  *Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007) ("[T]he court need not accept

26  conclusory allegations of law or unwarranted inferences . . . .").  To survive a motion to dismiss, a

27

28

---

[4] Plaintiff admits that he played the Game throughout the day on February 12, and presumably finished it.  Plaintiff's criticism of the Game after playing it for a day rings like a diner who complains about the quality of the meal and refuses to pay after cleaning his plate.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the

2  elements of a cause of action." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct.1937,

3  1949 (2009) (a complaint is defective if "it tenders 'naked assertion[s]' devoid of further factual

4  enhancement").

5  ## ARGUMENT

6  ## I.  PLAINTIFF'S UCL, CLRA AND FAL CLAIMS FAIL AS A MATTER OF LAW

7  Plaintiff attempts to state claims against Defendants for violations of the Consumer Legal

8  Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), and the False Advertising Law

9  ("FAL") (collectively, the "California Consumer Protection Laws") all based on the theory that

10  ACM did not have the unspecified "qualities" and "features" shown in the 2011 E3 Trailer two

11  years earlier and in other unspecified "demonstrations." *See, e.g.,* Compl. ¶¶ 81, 84, 99, 100, 102,

12  108-09.  Each claim fails.

13  ### A.  Plaintiff, a Pennsylvania citizen, cannot avail himself of California's consumer protection laws for injuries allegedly suffered in Pennsylvania.
14

15  Plaintiff is a citizen of Pennsylvania. Compl. ¶ 7.  He received Defendants' alleged

16  representations in Pennsylvania; he bought his copy of ACM in Pennsylvania; and he was

17  allegedly injured in Pennsylvania. *Id.* ¶¶ 53, 57, 60.  Despite Pennsylvania's close ties to

18  Plaintiff's alleged injury, Plaintiff purports to sue Defendants under California's Consumer

19  Protection Laws rather than under Pennsylvania's Unfair Trade Practices and Consumer

20  Protection Law.  But this Plaintiff cannot do.  As Pennsylvania's interests in Plaintiff's alleged

21  injury outweighs California's, Plaintiff cannot avail himself of the California Consumer

22  Protection Laws, and his CLRA, UCL, and FAL claims should properly be dismissed with

23  prejudice.

24  The Ninth Circuit recently explained that a "consumer protection claim should be

25  governed by the consumer protection laws of the jurisdiction in which the transaction took place"

26  and that "every state has an interest in having its law applied to its resident claimants." *Mazza v.*

27  *Am. Honda Motor Co.*, 666 F.3d 581, 591-94 (9th Cir. 2012).  To determine whether other states'

28  interests outweigh California's interests, courts conduct a "three-step governmental interest test":

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the court [determines] whether the law of the other state is materially different from California law;

if there is a difference, the court determines whether the other state has an interest in having its law applied;

if the other state has an interest, the court determines which state's interest would be most impaired if its policy were subordinated to the law of another state.

*Frezza v. Google, Inc.*, No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462, at *18 (N.D. Cal. April 22, 2013) (*citing Mazza*, 666 F.3d at 590-93).

While *Mazza* involved a motion for class certification, "the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss." *Frezza*, 2013 U.S. Dist. LEXIS 57462, at *17.  Indeed, following the dictates of *Mazza*, this Court and its sister district courts repeatedly have dismissed putative class actions alleging violations of California's consumer protection laws brought by out-of-state plaintiffs (including from Pennsylvania) regarding transactions outside of California. *See, e.g., Frezza*, 2013 U.S. Dist. LEXIS 57462, at *24 (dismissing UCL claims where putative class representatives were North Carolina citizens and the transactions at issue occurred in North Carolina); *Granfield v. Nvidia Corp.*, No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678, at *8-10 (N.D. Cal. July 11, 2012) (dismissing CLRA and UCL claims where putative class representative was a Massachusetts citizen and purchased allegedly defective computer in Massachusetts); *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530, at *5-6 (N.D. Cal. July 2, 2012) (dismissing UCL, FAL and CLRA claims brought by Pennsylvania plaintiff); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 2012 U.S. Dist. LEXIS 146971, at *70 (S.D. Cal. Oct. 11, 2012) (dismissing nonresident plaintiffs' UCL, FAL, and the CLRA claims with prejudice); *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, No. 3:11-cv-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215, at *9-10 (S.D. Cal. Feb. 13, 2012) (dismissing non-California citizens' CLRA and UCL claims); *Waller v. Hewlett-Packard Co.*, No. 11-cv-0454-LAB, 2012 U.S. Dist. LEXIS 77366, at *2 (S.D. Cal. June 1, 2012) ("under *Mazza v. American Hond Motor Co.*, non-California residents can't avail themselves of California's consumer protection laws").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  Applying the governmental interest test to the facts alleged by Plaintiff, it is clear that

2  Pennsylvania's interests in this matter outweigh California's, and Plaintiff's claims under the

3  California Consumer Protection Laws should be dismissed.

4          1.     <u>Pennsylvania's consumer protection laws are materially different from California's.</u>

5

6  This Court previously has found that "there are material differences in the consumer

7  protection laws of California and Pennsylvania" and dismissed UCL, FAL and CLRA claims

8  brought by a Pennsylvania plaintiff. *Littlehale*, 2012 U.S. Dist. LEXIS 162530, at *5.

9  Specifically, the Court found that "the availability of treble damages in Pennsylvania, but not

10  California, constitutes a material difference between the laws of the two states." *Id.*; *compare*

11  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat § 201-9.2

12  (a) (2013) ("court may, in its discretion, award up to *three times the actual damages sustained*")

13  (emphasis added); *with* Cal. Civ. Code § 1780(a) (authorizing damages, injunctive relief and

14  restitution under CLRA); Cal. Bus. & Prof. Code § 17203 (limiting UCL remedies to injunctive

15  relief and restitution); Cal. Bus. & Prof. Code § 17535 (limiting FAL remedies to injunctive relief

16  and restitution). As the Court explained, "*Mazza* found that differences in remedies can

17  constitute material differences." *Littlehale* 2012 U.S. Dist. LEXIS 162530, at *5 (*citing Mazza*,

18  666 F.3d at 591). In addition, Pennsylvania's consumer protection laws require scienter, but

19  California's do not, which the Ninth Circuit found was a material difference between the

20  California and Pennsylvania consumer protection laws. *Mazza*, 666 F.3d at 591 (*citing Debbs v.*

21  *Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. 2002)).

22          2.     <u>Pennsylvania has an interest in having its law applied.</u>

23  There can be no dispute that Pennsylvania has an interest in having its law applied to its

24  citizen's alleged injury in Pennsylvania. As the Ninth Circuit observed, "every state has an

25  interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 591-92 (internal

26  citation and punctuation omitted). On that reasoning, the *Mazza* Court held that "[t]he

27  automobile sales at issue in this case took place within 44 different jurisdictions, and each state

28  has a strong interest in applying its own consumer protection laws to those transactions." *Id.* at

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

592.  Likewise, in *Frezza*, this Court held that North Carolina had an interest in applying its own consumer protection laws to the allegedly unfair business practices at issue.  *Frezza*, 2013 U.S. Dist. LEXIS 57462, at *23-24; *see also Littlehale*, 2012 U.S. Dist. LEXIS 162530, at *5 (Pennsylvania had interest in applying its laws to Pennsylvania plaintiff's consumer protection claims); *Horvath*, 2012 U.S. Dist. LEXIS 19215, at *10 ("Because each state has an interest in setting the appropriate level of liability for companies conducting business within its territory, the Court declines to apply California consumer protection law to [out-of-state] Plaintiffs Forsythe, Montgomery, and Johnson").

3.      Pennsylvania's interest would be most impaired if its policy were subordinated to California law.

Under California law, "the place of the wrong has the predominant interest." *Mazza*, 666 F.3d at 593 (*citing Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980)); *see also Mazza,* 666 F.3d at 593 ("courts should not attempt to apply the laws of one state to behaviors that occurred in other jurisdictions").  The "place of the wrong" is the state where the last event necessary to make the actor liable occurred.  *Mazza*, 666 F.3d at 593 (*citing McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 94 n.12 (2010); *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957)).  Accordingly, in *Mazza*, the Ninth Circuit determined that the place of the wrong— "communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles"—was in the various plaintiffs' states, not in California, where defendant Honda was based.  *Mazza,* 666 F.3d at 594.  Likewise, in *Frezza*, this Court determined that "the last events necessary for liability—the communication of the advertisements to the plaintiffs and their reliance thereon in signing up for the trial period—took place in North Carolina, not in California. Hence, North Carolina has a strong interest in the application of its laws to transactions at issue." 2013 U.S. Dist. LEXIS 57462, at *24.  In *Mazza*, Defendant Honda was located in California, but the Ninth Circuit specifically rejected the argument that California's interest in regulating businesses within its boundaries required the application of California law "to the claims of foreign residents concerning acts that took place in other states." *Mazza*, 666 F.3d at 594.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Likewise, the last event necessary to make Defendants liable in this action—Plaintiff's

2    purchase of ACM in reliance on Defendants' alleged representations—occurred in Pennsylvania.

3    Compl. ¶¶ 7, 53, 57, 60.  Pennsylvania thus has the "predominant interest" in Plaintiff's

4    allegations.  *Mazza*, 666 F.3d at 592-93.

5    As application of the three-part governmental interest test to Plaintiff's allegations

6    unambiguously demonstrates that Pennsylvania's interests in this matter outweigh California's,

7    Plaintiff cannot avail himself of the California Consumer Protection Laws and his first, second

8    and third claims should be dismissed with prejudice.

9    **B.      Plaintiff lacks standing under CLRA, UCL and FAL because his alleged
       reliance was not reasonable.**

10

11    In order to have standing under the CLRA, UCL and FAL, a plaintiff must demonstrate

12    reasonable reliance on the alleged misrepresentations.  *See, e.g., Williamson v. Reinalt-Thomas*

13    *Corp.*, No. 5:11-cv-03548-LHK, 2012 U.S. Dist. LEXIS 58639, at *29-30 (N.D. Cal. Apr. 25,

14    2012) (FAL, CLRA and UCL standing requires showing reasonable reliance on unlawful business

15    practices); *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1197 (N.D. Cal. 2012) ("to establish

16    standing under the UCL, a plaintiff must show he personally lost money or property because of

17    his own actual and reasonable reliance on the allegedly untrue or misleading statements").  This

18    Plaintiff cannot do.

19    Under California law, "whether a party's reliance was justified may be decided as a matter

20    of law if reasonable minds can come to only one conclusion based on the facts."  *Woods*, 889 F.

21    Supp. 2d at 1196 (dismissing UCL and FAL claims where plaintiff's reliance was unreasonable in

22    light of disclaimers).  Reasonable minds can only conclude that Plaintiff's reliance here was not

23    reasonable as the alleged depiction of the Game was disseminated *two years before the Game was*

24    *finished*, even though Plaintiff concedes that games in development are subject to changes before

25    they are released, not all of which live up to fans' expectations. *See* Compl. ¶ 55 (Plaintiff

26    cancelled his initial pre-order before the game's release after industry reports gave him concerns

27    that the game would be "released as a substandard product").  Moreover, the E3 2011 Trailer, the

28    sole representation upon which Plaintiff relied in deciding to purchase ACM (Compl. ¶ 57),

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

expressly indicated that the game was still a "Work in Progress."[5] *Id.* ¶ 24; Declaration of Steve Gibson in Support of Defendants' Request for Judicial Notice, Ex. A.  By definition, a work in progress is an incomplete and yet to be finished product.  As such, Plaintiff could not reasonably rely on it to depict exactly what the finished product would look like. *See, e.g., Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (affirming dismissal of FAL and UCL claims where language qualifying the allegedly deceptive sweepstakes mailer appeared on the representations which "no reasonable reader could ignore").  Plaintiff's protest that the released Game was "much worse" than the version shown (Compl. ¶ 62) is thus not actionable as it is not reasonable to rely on game images shown two years before a product is released or which expressly specify that the product is a "Work in Progress."

**C.    Plaintiff has not pled a violation of the CLRA, FAL, or UCL.**

1.    Rule 9(b) governs Plaintiff's CLRA, FAL and UCL claims.

CLRA, UCL and FAL claims based on alleged misrepresentations or concealments are grounded in fraud and thus subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir. 2003); *Cullen v. Netflix*, No. 5:11-cv-01199-EJD, 2013 U.S. Dist. LEXIS 4246, at *17 (N.D. Cal., January 10, 2013) ("The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to all UCL, FAL, or CLRA claims that are grounded in fraud.").  In *Kearns*, the Ninth Circuit held that the entire complaint, including UCL and CLRA claims, was grounded in fraud where the plaintiff alleged that he purchased a Certified Pre-Owned vehicle from defendant Ford Motor Company in reliance on Ford's false and misleading statements concerning the safety and reliability of its CPO vehicles, disseminated through Ford's marketing campaign.  *Kearns*, 567 F.3d at 1125-26; *see also Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007) (applying Rule 9(b) to UCL and CLRA claims where plaintiff alleged that defendant misrepresented or concealed material information about the quality of satellite telephone services).

---

[5] The Complaint alleges that "Defendants would—at times—remove the "Work in Progress" watermark from the 'actual gameplay' videos released to the public" (Compl. ¶ 28), but Plaintiff does not allege what videos supposedly did not carry the mark, much less that he ever saw one.

Fenwick & West LLP
Attorneys at Law
Mountain View

To satisfy Rule 9(b), allegations "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The alleged fraud must be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess*, 317 F.3d at 1106 (citation omitted).  The allegations "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *Cullen*, 2013 U.S. Dist. LEXIS 4246, at *9 (*citing Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir.1994); *see also Tayag v. Nat'l City Bank*, No. C 09-667 SBA, 2009 WL 943897, at *2 (N.D. Cal. Apr. 7, 2009) (for claims rooted in fraud, "[t]he content of the alleged misrepresentation is necessary to state a claim"); *Kearns*, 567 F.3d at 1125-26 (plaintiffs must plead the "who, what, when, where, and how" of the alleged misconduct, including particular misrepresentations on which they supposedly relied).  Plaintiff also must allege "the circumstances in which they were exposed" to the allegedly false or misleading statements, as well as "upon which of the[] misrepresentations they relied in making their purchase."  *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010); *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 13187, at *10 (N.D. Cal. Feb. 10, 2011).

It is not sufficient that a complaint states general allegations regarding a defendant's conduct; Rule 9(b) requires that a complaint plead with particularity the fraud allegedly perpetrated *on Plaintiff.  Kearns*, 567 F.3d at 1125-26 (Rule 9(b) not satisfied where plaintiff did not specify "when he was exposed to" the advertisements or sales materials, "which ones he found material," or "which sales material he relied upon in making his [purchase] decision"); *Pirozzi v. Apple Inc.*, No. 12-CV-01529 YGR, 2012 WL 6652453, at *6-7 (N.D. Cal. Dec. 20, 2012) (Rule 9(b) not satisfied where plaintiff did not specify when she was exposed to representations or which ones she found material to her purchase decision); *Edmunson v. P&G Co.*, No. 10-cv-2256-IEG, 2011 U.S. Dist. LEXIS 53221, at *16-17 (S.D. Cal. May 17, 2011) (dismissing UCL and CLRA claims where "complaint contains general allegations about Defendant's products and advertising scheme, but almost no allegations specific to Plaintiff").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Here, Plaintiff's entire Complaint is premised on the theory that Defendants' misrepresentations wrongfully induced Plaintiff to purchase ACM.  Plaintiff alleges that "Defendants promised consumers that they would receive a product with specific qualities and features, but then delivered something else entirely-to the tune of ill-gotten sales."  Compl. ¶ 1; *see also id.* ("At its core, this case is a classic bait-and-switch").  Plaintiff further alleges that Defendants' "misrepresentations… wrongfully induced Plaintiff and the other members of the Class to purchase Aliens: Colonial Marines when they otherwise would not have purchased the game or would have paid less for their purchase."  *Id.* ¶ 4; *see also id.* ¶¶ 81, 91-92, 100-01, 104, 110 (UCL, FAL and CLRA claims alleging fraud).  Plaintiff's CLRA, UCL and FAL claims are thus grounded in fraud and are subject to Rule 9(b).

### 2.     Plaintiff's claims do not satisfy Rule 9(b).

Plaintiff fails to satisfy Rule 9(b) on even the most basic level.  He alleges that he decided to re-order ACM "some time later," after previously cancelling his original pre-order, "based on the E3 2011 gameplay demonstration" because the demonstration "purported to demonstrate 'actual gameplay'" of the Game.  Compl. ¶¶ 56-57.  He does not specify *when* he saw the trailer; *what* the contents of the trailer depicted; *what* representation in the trailer he relied on; or *why* the demonstrations were false.  His bare recitation that he relied on the demonstration "because it purported to demonstrate 'actual gameplay'"—without specifying what was actually depicted in the demonstration or what about is was material to his decision to purchase the Game—is not sufficient.  *See, e.g.*, *Kearns*, 567 F.3d at 1126 (plaintiff failed to satisfy Rule 9(b) where he did not specify "when he was exposed to" the advertisements or sales materials, "which ones he found material," or "which sales material he relied upon in making his [purchase] decision"); *Tayag*, 2009 WL 943897, at *2 ("the content of the alleged misrepresentation is necessary to state a claim").  Plaintiff alleges that he viewed "additional gameplay demonstrations" through 2012 and up to the Game's release which "convinced" him that he would be satisfied with his purchase.  Compl. ¶¶ 59-60.  But Plaintiff fails to plead a single detail about these purported "additional" demonstrations, much less what they contained or what about them he found material to his decision to go through with his purchase.  Plaintiff's failure to allege *with specificity* any

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

representation to which he was exposed, and upon which he relied, renders his complaint well short of what Rule 9(b) requires. *See* Compl. ¶¶ 56-57, 60.

3.    Plaintiff does not plead that Defendants knew the representations were false.

In addition to pleading the "who, what, when, where, and how" of the alleged fraud, to satisfy Rule 9(b), "the plaintiff must plead facts explaining why the statement was false *when it was made*." *Maxwell v. Unilever United States, Inc.*, No. 5:12-cv-01736-EJD, 2013 U.S. Dist. LEXIS 51195, at *9-10 (N.D. Cal. Apr. 9, 2013) (emphasis added) (*citing In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds). In *In Re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1093-94 (S.D. Cal. 2010), plaintiffs attempted to state causes of action under the California Consumer Protection Laws against defendant Sony Electronics.  The plaintiffs alleged that Sony misrepresented that its high-definition televisions offered picture quality superior to that of standard televisions, even though, alleged the plaintiffs, Sony was aware that the televisions suffered from a latent defect that would harm the quality of the images displayed by the televisions. *Id.* at 1088.  The court dismissed the plaintiffs' claims, noting, among other deficiencies, that the plaintiffs failed to sufficiently allege that Sony was aware of the defect at that time: "[s]uch allegations would have offered at least some support to the notion that Sony's representations about the quality of the televisions were *false at the time they were made*." *Id.* at 1090 (emphasis added).

Likewise, here Plaintiff has alleged no facts evidencing that Defendants knew that the alleged representations were false when made.  Rule 9(b) is not satisfied by Plaintiff's conclusory allegations that "Defendants knew that they were unable or unwilling to include the qualities and specific features shown in the 'actual game play' demonstrations."  Compl. ¶ 84; *see also id.* ¶¶ 109, 125, 134.  As the Court explained in *Tietsworth v. Sears RoeBuck & Co.*, No. 5:-09-cv-00288 JF, 2009 U.S. Dist. LEXIS 98532, at *13 (N.D. Cal. Oct. 13, 2009), a plaintiff cannot establish a defendants' knowledge of an alleged product defect "by pleading, in purely conclusory fashion, that Defendants were in a superior position to know the truth about the [product] and

actively concealed the defect." (internal quotations omitted)  Otherwise, the Court explained,

"any unsatisfied customer could make a similar claim every time a product malfunctioned."

*Id.* at 14; *see also Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008)

(plaintiffs' general allegations of defendant's "exclusive knowledge as the manufacturer" was

insufficient).  Plaintiff tries to sidestep this pleading deficiency by alleging that Gearbox's Mr.

Pitchford "acknowledged the discrepancy between the Aliens: Colonial Marines hands-off demo

and the final game," citing to news article published *after the game was released.*  Compl. ¶ 49

n.7.  But Plaintiff does not allege that Mr. Pitchford, or anyone else, knew about any purported

discrepancy two years earlier when the E3 2011 Trailer was released, or at the time of the

"additional" demonstrations.  Indeed, Plaintiff *cannot* plead that Defendants knew about any

purported discrepancy at the time of the alleged representations because the Game was still years

two years away from being released.

### 4.    The alleged misrepresentations are non-actionable.

CLRA, UCL and FAL claims are all governed by the "reasonable consumer" test.  *Elias v.*

*Hewlett-Packard Co.*, No. 12-cv-00421-LHK, 2012 U.S. Dist. LEXIS 146811, at *24 (N.D. Cal.

Oct. 11, 2012) (*citing Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  As a

consequence, "courts often analyze these three statutes together."  *Elias*, 2012 U.S. Dist. LEXIS

146811, at *24-25.  To be legally actionable, a statement must amount to "misdescription[] of

specific or absolute characteristics of a product."  *Oestreicher*, 544 F. Supp. 2d at 973.

Accordingly, representations that say nothing about the "specific characteristics or components"

of a product are "mere puffery" upon which a reasonable consumer would not rely, and are thus

not actionable under California's consumer protection laws.  *Elias*, 2012 U.S. Dist. LEXIS

146811, at *28; *Oestreicher*, 544 F. Supp. 2d at 973 (dismissing CLRA, FAL, and UCL claims

because representations that laptops had "higher performance," "longer battery life," "richer

multimedia experience," and "faster access to data" amounted to non-actionable statements as a

matter of law).  Thus, plaintiffs fail to state a claim under the CLRA, UCL and FAL where the

alleged representations say nothing about the specific characteristics or components of the

product.  *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

The only specific representation that Plaintiff alleges is that Randy Pitchford, President of Gearbox, while narrating a presentation of the game at E3 2011, said "Today, we're going to show you a bit of the game…[Y]ou're going to see what the game *actually looks like.* Not just screenshots but the *actual gameplay.*" Compl. ¶ 23 (emphasis in Complaint).  That is it.  Plaintiff does not allege that Mr. Pitchford described *a single particular trait* about the Game.  Plaintiff only alleges that Mr. Pitchford made the redundant statement that the *live demonstration* of the game, complete with a "WORK IN PROGRESS" disclaimer, demonstrated what the game looked like *at the time*.  This statement is not actionable as it does not describe any particular trait about ACM.  *Elias*, 2012 U.S. Dist. LEXIS 146811, at *28.  Moreover, Mr. Pitchford's alleged representation was true: as Plaintiff concedes, the demonstration involved a "live demo of the game played by a Gearbox representative before an audience."  Compl. ¶ 22 (internal punctuation omitted).  Plaintiff does not allege that the demonstration did not feature live gameplay – he is just unhappy with the Game's continued developments in the two years following that live demonstration.

Plaintiff attempts to overcome his lack of pleading specific representations by imputing third parties' representations to Defendants.  Plaintiff alleges that "industry reporters" remarked on the "*robust* artificial intelligence, *atmosphere*, and *exciting* gameplay sequences" of the game-in-progress.  Compl. ¶ 25 (emphasis added).  Plaintiff also notes that "two critics" from a video game website noted various differences between the released Game and the Game as demonstrated prior to its release, such as the demonstration's "*higher* [graphical] resolution," "*advanced* dynamic lighting," and "*many* custom animations."  *Id.* ¶ 36 (emphasis added).  Plaintiff's sleight-of-hand does not save his claims, however, as third party representations are beside the point.  Only Defendants' representations and Plaintiff's reliance on them are relevant.  Moreover, the supposed praise by third parties, e.g., "*robust* artificial intelligence…*exciting* gameplays….*higher* [graphical] resolution…*advanced* dynamic lighting," reads like a 'greatest hits' of non-actionable puffery.  *Oestreicher*, 544 F. Supp. 2d at 973 ("higher performance," "longer battery life," and "richer multimedia experience" are non-actionable statements); *In re Sony Grand Wega KDF-E*, 758 F. Supp. 2d at 1089 (dismissing CLRA, UCL and FAL claims

1    alleging that Sony misrepresented that its televisions were "superb," "excellent," or "high

2    quality").

3            5.      The appearance of a product itself is not an actionable representation.

4          In *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 924-25 (N.D. Cal. 2012), this Court

5    rejected the argument that "a 'representation' conveyed by a product's appearance alone" can

6    give rise to liability for fraud or under the California Consumer Protection Laws.  The plaintiff

7    there sued defendant Apple for fraud and UCL and CLRA violations after the signal-strength

8    meter on his iPhone did not work as well as the signal-meter on the iPhone displayed at the store

9    at the time of his purchase.  *Id.*  Plaintiff alleged that the iPhone display constituted a

10   "representation" for purposes of the UCL and CLRA.  *Id.*  This Court disagreed, noting that

11   otherwise, "if a car's dashboard clock were fast or its temperature gauge miscalibrated, the

12   manufacturer would have engaged in an actionable misrepresentation."  *Id.* at 924.  The Court

13   concluded that the UCL and CLRA did not "reach so far."  *Id.*  Nor do the consumer protections

14   statutes "reach so far" as Plaintiff in this case would like.  As in *Donohue*, the appearance of

15   ACM itself, unaccompanied by any representations regarding the "specific characteristics or

16   components" of ACM, is not actionable. *Elias*, 2012 U.S. Dist. LEXIS 146811, at *28.  The

17   concern articulated by the *Donohue* court—that otherwise a manufacturer would be liable for

18   misrepresentation anytime a product does not look exactly like it was depicted in an

19   advertisement, even where unaccompanied by any specific representations—has even more force

20   here.  In this case, unlike in *Donohue*, the alleged misrepresentation was disseminated years

21   before the product was released, while the product was still in development. Compl. ¶¶ 23, 56.

22   **II.**      **PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS**

23          **WARRANTY.**

24         Plaintiff's express warranty claim fares no better than his consumer protection claims.  He

25   alleges that Defendants' advertising constituted "affirmations of fact or a promise" and

26   Defendants thereby "expressly warranted" that ACM would include "qualities" and "features"

27   shown in unspecified "demonstrations."  Compl. ¶¶ 115-16.  Plaintiff thus ably recites language

28   associated with a claim for breach of express warranty, but he utterly fails to plead facts in

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   support of the elements of such claim, which are: (1) the *exact terms* of the warranty; (2) his

2   reasonable reliance thereon; and (3) breach of the warranty which proximately caused his injury.

3   *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 987 (N.D. Cal. 2009); *Blennis v. Hewlett-Packard Co.*,

4   No. C 07-00333 JF, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008); Cal. Com. Code § 2313.

5       Nowhere in the Complaint does Plaintiff allege the terms of the supposed warranty he

6   relied on.[6]  The only "fact" that Plaintiff alleges in support of his warranty claim is that the

7   Defendants represented that "the game would include the qualities and specific features shown in

8   the 'actual gameplay' demonstrations."  Compl. ¶ 115.  This is insufficient.  As this Court has

9   explained "[g]eneral assertions that Plaintiffs relied on 'a commercial' or 'the commercial' or

10  'advertisements online' are not equivalent to a recitation of the exact terms of the underlying

11  warranty."  *Baltazar*, 2011 U.S. Dist. LEXIS 13187, at *6.  Rather, "Plaintiffs must identify the

12  particular commercial or advertisement upon which they relied and must describe with the

13  requisite specificity the content of that particular commercial or advertisement."  *Id.*  Plaintiff's

14  express warranty claim thus fails with his wholesale failure to identity the content of the

15  alleged—and unspecified—representations.

16  **III.   PLAINTIFF FAILS TO STATE CLAIMS FOR FRAUDULENT INDUCEMENT**
    **OR NEGLIGENT MISREPRESENTATION.**

17

18      Plaintiff's claims for fraudulent inducement and negligent misrepresentation are based on

19  the same alleged misrepresentations as the CLRA, UCL, and FAL claims.  Compl. ¶¶ 123-24,

20  132-34.  The fraudulent inducement and negligent misrepresentation claims are subject to the

21  heightened pleading requirements of Rule 9(b).[7]  *Neilson v. Union Bank of Cal., N.A.,* 290 F.

22  Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well established in the Ninth Circuit that both claims

23  _____

24  [6] As noted at page 14, Plaintiff's effort to redress his pleading deficiencies by alleging third
    parties' representations is fruitless.  *See, e.g.,* Compl. ¶¶ 25, 32.

25  [7] To the extent that Plaintiff's negligent misrepresentation claim is not grounded in fraud, and
    thus not subject to Rule 9(b), that claim is barred by the economic loss doctrine.  *Stearns v. Select
    Comfort Retail Corp.*, No. 08-2746-JF, 2009 U.S. Dist LEXIS 48367, at *10-11 (N.D. Cal.

26  June 5, 2009) ("when a purchaser's expectations in a sale are frustrated because the product he
    bought is not working properly, his remedy is said to be in contract alone, for he has suffered only

27  'economic' losses….Thus, any damages related to Plaintiffs' 'disappointed' expectations or
    purely economic loss are not recoverable for either claim") (internal punctuation omitted) (*citing

28  Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979, 988 (2004)).

1   for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirement");

2   *Stearns*, 2009 U.S. Dist LEXIS 48367, at *36 ("Negligent misrepresentation is a claim based in

3   fraud and thus is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b)").

4        In order to state a claim for fraudulent inducement under California law, a plaintiff must

5   plead: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce

6   reliance; (4) justifiable reliance; and (5) resulting damage.  *Worley v. Avanquest North Am., Inc.*,

7   No. C 12-04391 SI, 2013 U.S. Dist. LEXIS 16239, at *7 (N.D. Cal. Feb. 5, 2013) (*citing Lazar v.*

8   *Superior Court*, 12 Cal. 4th 631, 638 (1996)).  Similarly, the elements of a claim for negligent

9   misrepresentation under California law are: (1) a misrepresentation of a material fact; (2) without

10   reasonable grounds for believing it to be true; (3) intent to induce reliance; (4) justifiable reliance;

11   and (5) resulting damage.  *Stearns*, 2009 U.S. Dist. LEXIS 48367, at *36 (*citing Glen K. Jackson,*

12   *Inc. v. Roe,* 273 F.3d 1192, 1200 n.2 (9th Cir. 2001)).  Vague and unspecified assertions are not

13   actionable under either a fraud or negligent representation claim. *Glen Holly Entm't, Inc. v.*

14   *Tektronix Inc.*, 352 F.3d 367, 379 (9th Cir. 2003).  Rather, to be legally actionable, a statement

15   must amount to "misdescription[] of specific or absolute characteristics of a product."

16   *Oestreicher*, 544 F. Supp. 2d at 973.  Thus, the difference between the two claims is that

17   fraudulent inducement requires knowledge of falsity of the misrepresentation, while a lack of

18   reasonable grounds for believing the misrepresentation to be true suffices for a claim for

19   negligent misrepresentation.

20        Plaintiff has failed to plead a single misrepresentation with specificity, and the alleged

21   misrepresentation that he has plead (albeit inadequately) is not actionable.  Plaintiff has also

22   failed to adequately plead that Defendants lacked reasonable grounds for believing the alleged

23   misrepresentation to be true, much less that Defendants knew it to be false.  *See* pages 11-13.

24   Finally, Plaintiff has not pled justifiable reliance.  *See* pages 8-9.  Accordingly, Plaintiff's fraud

25   and negligence claims fail largely for the same deficiencies that haunt the consumer protection

26   claims.  *See, e.g., Worley*, 2013 U.S. Dist. LEXIS 16239, at *16 (holding that plaintiff "cannot

27   state a claim under the UCL's fraudulent prong for the same reasons his fraudulent inducement

28   claim fails" where claims were based on same representations).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## CONCLUSION

2      Plaintiff Perrine may not have enjoyed playing the Game.  The video game critics may

3 have blasted the Game.  But showing "actual gameplay" of a "WORK IN PROGRESS" as it actually

4 existed in June 2011 is not fraudulent just because the Game changed over the ensuing twenty

5 months before its release in February 2013.  Gearbox's Mr. Pitchford did nothing more than show

6 the "actual gameplay" as it existed in June 2011, and doing so was not false, fraudulent or

7 otherwise tortious.

8      Defendants respectfully request that the Court grant their motion to dismiss and dismiss

9 Plaintiff Perrine's Complaint.

10 Dated:   June 14, 2013                    FENWICK & WEST LLP

11

12                                          By: */s/ Rodger R. Cole*

13                                             Rodger R. Cole

14                                          Attorneys for Defendants
                                            SEGA OF AMERICA, INC. and
15                                          GEARBOX SOFTWARE, L.L.C.

16 SF/5435220.4

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW