Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin S. Thomassen*
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Admitted *Pro Hac Vice.*

*Attorneys for Plaintiffs John Locke, Damion Perrine, and the Putative Class*

Claude M. Stern (Bar No. 967737)
claudestern@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Tel: (650) 801-5000
Fax: (650) 801-5100

Karin A. Kramer (Bar No. 87346)
karinkramer@quinnemanuel.com
Jenny Grantz (Bar No. 287960)
jennygrantz@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco California 94111
Tel: (415) 875-6600
Fax: (415) 857-6700

*Attorneys for Defendant Sega of America, Inc.*

ROBERT M. SCHWARTZ (S.B. #117166)
rschwartz@omm.com
VICTOR JIH (S.B. #186515)
vjih@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California  90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

*Attorneys for Defendant Gearbox Software, L.L.C.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LOCKE and DAMION PERRINE, individually and on behalf of all others similarly situated,<br><br>         *Plaintiffs*,<br><br>    v.<br><br>SEGA OF AMERICA, INC. a California corporation, and GEARBOX SOFTWARE L.L.C., a Texas limited liability company,<br><br>         *Defendants*. | Case No. 5:13-cv-01962-JD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. James Donato<br>Action Filed: July 5, 2013 |

Pursuant to the Order Reassigning Case and Order to File Joint Case Management Statement, along with the Standing Order for all Judges of the Northern District of California, Plaintiffs John Locke and Damion Perrine ("Plaintiffs") and Defendants Sega of America, Inc. ("Sega") and Gearbox Software L.L.C. ("Gearbox") ("Defendants") (and collectively with Plaintiffs, the "Parties"), hereby jointly submit the following Case Management Statement.

## I.   JURISDICTION AND SERVICE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy as alleged exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action. No issues exist with respect to personal jurisdiction or venue, and Defendants have been served.

## II.   FACTS

**A.   Plaintiffs' Position:** Defendants developed and marketed a video game, *Aliens: Colonial Marines*, based on the popular *Alien* movie franchise. In 2011, Defendants began a media campaign comprised of "actual gameplay" demonstrations (live events where Defendants' agents would play the video game), and publically represented that the demonstrated version (the "Demo Version") would be the retail version available to consumers.

After Defendants released the final version of the game to the public in early 2013 (the "Retail Version"), purchasers and reviewers discovered that the game they thought they were getting, the Demo Version, was different than the version they received, the Retail Version. As explained in more detail in Plaintiffs' First Amended Complaint (Dkt. 26), the Demo Version contained certain technical capabilities that the Retail Version did not, such as advanced artificial intelligence programming, gameplay sequences drawn from the *Aliens* movie, and a highly advanced graphics engine (the "Demo Engine") capable of creating, *inter alia*, dynamic moving light sources, highly detailed and differentiated textures, complex particle effects, a rich variety of custom animations, and immersive dynamic weather effects.

Despite their knowledge that the Retail Version lacked the Demo Engine's features, Defendants advertised these features until the game's release date and, beginning in or around 2012, removed the "work in progress" disclaimers from such advertisements. And because Defendants contractually barred industry critics from reviewing or writing about the game prior to its public release, Defendants retained exclusive control over all information concerning the actual quality of the Retail Version. By the time that quality was publicly known, thousands of consumers had already pre-purchased or purchased the game on release day, paying between $50 and $100 in reliance on the representations made by Defendants.

### B. Defendants' Position:

In February 2013, the videogame *Aliens: Colonial Marines* was commercially released. Roughly two years prior to the game's release, a "gameplay demonstration" of the game was presented to an audience attending E3, a popular video gaming convention. A "work in progress" watermark was displayed on screen during this gameplay demonstration. During this gameplay demonstration, portions of the work-in-progress were played for those in attendance. Defendants made no representation that the final game would look exactly like the demonstration, nor could they, as the final game was nearly two years from being completed. To the contrary, the gameplay demonstration was explicitly labeled as a "work-in-progress." Plaintiffs do not contest the presence of the "work-in-progress" disclaimer at the E3 convention.

In the 20 months that passed between the 2011 E3 demonstration and the game's eventual release, Defendants continued to develop and modify the unfinished game. As with all video game prototypes, various features were modified. Such changes naturally reflect the development process and are inherent in a creative work; there is no basis to assume it reflects the development of a separate "demo engine" created for the purpose of defrauding consumers.

Every customer who purchased and installed a copy of *Aliens: Colonial Marines* accepted the unambiguous terms contained within Defendant Sega's written End User License Agreement ("Agreement"). The Agreement expressly disclaims any express or implied warranties as to the quality of the product, and further provides that the only remedy for dissatisfaction with the game

is stop using the game. Such Agreements are standard industry practice with respect to consumer software.

## III.   LEGAL ISSUES

The legal issues in this case include, but are not limited to:

1. Whether Defendants developed, for demonstration purposes, a separate game engine not intended for retail release and, if so, how that engine was used to advertise the retail *Aliens: Colonial Marines* video game;

2. Whether Defendants made false statements, promises, and/or descriptions (along with the nature of those statements, promises, and/or descriptions) regarding the features and gameplay content of the *Aliens: Colonial Marines* video game;

3. Whether consumers can reasonably rely on alleged false statements made in the presence of a "work in progress" label that appeared during some of Defendants' advertising of the *Aliens: Colonial Marines* video game;

4. Whether Defendants' conduct violated Cal. Civ. Code § 1750 *et seq.*, Cal. Civ. Code § 1720 *et seq.*, or Cal. Bus. & Prof. Code § 17500 *et seq.*;

5. Whether Defendants made or breached any express warranties, fraudulently induced Plaintiffs and members of the Class; or negligently misrepresented qualities and features of the *Aliens: Colonial Marines* video game;

6. Whether the putative Class is appropriate for certification under Fed. R. Civ. P. 23;

7. Whether the terms of an End User License Agreement are binding on Plaintiffs and, if so, whether (i) those terms preclude or otherwise affect the claims asserted in this matter, and/or (ii) consumers can reasonably rely on alleged false statements given the express disclaimer of warranties present in those terms; and

8. Whether those Plaintiffs (and members of the putative class) not residing in California have standing to seek relief under California's consumer protection statutes.

9. Whether some or all of the games at issue constitute "goods" within the meaning of the California Consumer Legal Remedies Act.

## IV. MOTIONS

On June 14, 2013, Defendants moved to dismiss Plaintiff Perrine's original complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 14). In response, Plaintiffs Perrine and Locke filed their First Amended Class Action Complaint on July 5, 2013. (Dkt. 26).

Thereafter, on July 22, 2013, Defendants again moved to dismiss Plaintiffs' claims under Cal. Bus. & Prof. Code § 17500 *et seq.*, and for breach of express warranties. (Dkt. 29). On October 3, 2013, the Court denied Defendants' motion.

Plaintiffs and Sega have reached a settlement in principle, which, if approved, will fully and finally resolve the claims alleged in this case, both individually, and on behalf of the putative class Plaintiffs seek to represent. Because the Plaintiffs have reached a settlement agreement in principle with Sega that will resolve the class action litigation in its entirety (i.e., including Plaintiffs' claims against Gearbox) and are in the process of reducing that agreement to writing, Plaintiffs anticipate filing motions for (i) preliminary and (ii) final approval of a class action settlement. Plaintiffs' motion for preliminary approval will be presented to the Court immediately following the execution of an agreement between Plaintiffs and Sega. Plaintiffs and Sega are committed to finalizing the settlement and presenting the Court with preliminary approval papers as soon as reasonably practical after the filing of this Case Management Statement.

That said, if, for some reason, the settlement is not consummated, Plaintiffs anticipate filing motions for (i) class certification, (ii) summary judgment, and (iii) discovery related motions, if necessary. Likewise, if, for some reason, the settlement is not consummated, Defendants anticipate filing motions for (i) summary judgment, (ii) discovery-related matters, and (iii) fees and costs. In addition, Defendant Gearbox anticipates filing dispositive motions based on the pleadings, including a motion for reconsideration of the Court's October 3, 2013 Order in light of *McMahon v. Take-Two Interactive Software, Inc.*, 2014 WL 324008 (C.D. Cal. Jan. 29, 2014).

## V. AMENDMENT OF PLEADINGS

**A.** **Plaintiffs' Position:** At this time, Plaintiffs do not anticipate that any additional amendments of the pleadings will be necessary. However, information obtained through additional

discovery may necessitate amendments in the future. Plaintiffs propose that amended pleadings (if any), be filed in accordance with the schedule and deadlines referenced in Section XVII below.

     **B.**      **Defendants' Position:** Defendants answered Plaintiffs' Amended Complaint and reserve the right to amend their answer thereafter in accordance with the Federal Rules of Civil Procedure and the case schedule established by this Court. If the Parties fail to reach a settlement, Defendant Gearbox anticipates seeking leave to amend the pleadings.

## VI. EVIDENCE PRESERVATION

The Parties have conferred with their respective counsel about the need to preserve evidence that may be relevant to Plaintiffs' claims or Defendants' defenses, including the preservation of electronically stored information.

## VII. DISCLOSURES

The Parties exchanged their respective 26(a)(1) disclosures on October 30, 2013.

## VIII. DISCOVERY

     **A.**      **History of Discovery**

Shortly after the Court decided Defendants' motion to dismiss and following the Parties' October 11, 2013 Initial Case Management Conference, the Parties immediately proceeded with discovery, with Plaintiffs propounding interrogatories and requests for documents on October 4, 2013, Defendants serving notices of deposition for both Mr. Locke and Mr. Perrine on October 14, 2013, and both Parties exchanging their initial disclosures on October 30, 2013.

While they advanced the litigation, the Parties concurrently discussed the possibility of resolving the case. To that end, in October/November of last year, the Parties scheduled a mediation before Hon. Rebecca Westerfield (Ret.) of JAMS for January 21, 2014. The Parties also agreed to exchange key information on an informal basis leading up to the mediation, so as to provide each side with the information necessary to effectively evaluate the claims and defenses in the case, and ultimately, inform a fair and reasonable settlement of the dispute. As such, in November 2013 and then again in January 2014 (i.e., before the Parties' mediation), Defendants produced to Plaintiffs information regarding (i) contractual information underlying the

development and production of *Aliens: Colonial Marines*, (ii) the media plan for the product; (iii) samples of advertising and certain factual information regarding the development of the advertising of *Aliens: Colonial Marines* over the course of the game's development, (iv) sales information, and (v) additional information concerning the scope and size of the putative class, as defined by the First Amended Complaint. Additionally, in January 2014, the Parties exchanged mediation briefs, wherein both sides addressed the facts of the case known to them, along with their views on the litigation and possibility of settlement. Finally, Gearbox responded to Plaintiffs' discovery requests in March 2014, concurrent with Plaintiffs' and Sega's settlement discussions.

  **B.**  **Scope of Discovery**

  **1.**  **Plaintiffs' Position:** the scope of discovery for this matter includes, without limitation: information related to the development of the Demo and Retail Versions of *Aliens: Colonial Marines*; communications and contracts relating to the development of the Demo and Retail Versions of *Aliens: Colonial Marines*; communications relating to the Actual Gameplay demonstrations; the marketing and advertisements related to the Retail Version of *Aliens: Colonial Marines*; and details related to pre-sales and launch day sales of the video game.

  **2.**  **Defendants' Position:** the scope of discovery for this matter includes, without limitation: Plaintiffs' agreement to the terms of the End User License Agreement through which they were able to install and play *Aliens: Colonial Marines*; Plaintiffs' use and enjoyment of the product following its release; the factors influencing Plaintiffs' respective decisions to license *Aliens: Colonial Marines*; Plaintiffs' knowledge of industry practices and standards surrounding the use of gameplay demonstrations; and Plaintiffs' adequacy and typicality as class representatives.

  **B.**  **Phased Discovery:** The Parties agree that phasing discovery is unnecessary in this matter beyond the proposed schedule set forth in Section XVII below.

  **C.**  **Form of Electronic Discovery and Claims of Privilege:** The Parties submitted, (Dkt. 44), and the Court approved, (Dkt. 45), a Protective Order governing treatment of confidential information in this case. The Parties also considered entering into a stipulated e-

discovery order, and may—in the event the settlement not be consummated—submit a joint stipulation, subject to the Court's approval, governing such issues.

**IX. CLASS ACTION**

**A. Plaintiffs' Position:** Plaintiffs seek class certification of a class (the "Class") under Fed. R. Civ. P. 23(b)(3) of similarly situated individuals and entities, defined as follows:

> All persons in the United States who paid for a copy of the *Aliens: Colonial Marines* video game either on or before February 12, 2013.

The proposed Class satisfies each of the requisites to class certification under Rule 23(b)(3). In particular, the Class consists of approximately one hundred fifty thousand individuals, making joinder of all members impracticable (numerosity); there are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, which predominate over any questions that may affect only individual Class members (commonality and predominance); Plaintiffs' claims are typical of the claims of all of the other members of the Class, inasmuch as they were similarly damaged as a result of Defendants' alleged unlawful conduct (typicality); and Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, and have retained counsel competent and experienced in complex class actions (adequacy of representation).

Similarly, class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. That is, the damages suffered by the individual members of the Class will likely be relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' alleged conduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties, as well as the likelihood of the imposition of inconsistent obligations. Moreover, Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final restitutionary relief with respect to the Class as a whole.

Consitent with the above, Plaintiffs will either move for certification of the above-described class for settlement purposes immediately following the execution of a settlement

agreement with Sega (i.e., in the context of a motion for preliminary approval of that agreement), or move for adversarial certification of the class pursuant to the case schedule.

**B.     Defendants' Position:** If a motion for class certification is filed (i.e., other than for certification of a settlement class through the preliminary approval process), Defendants will oppose certification on the grounds that individualized questions of law and fact predominate over any common questions, that Plaintiffs are not adequate or typical class representatives, and that a class action is not superior to other methods of adjudicating this controversy.

## X.     RELATED CASES

The Parties are unaware of any related cases at this time.

## XI.    RELIEF SOUGHT

**A.     Plaintiffs' Position:** Plaintiffs seek: (i) certification of this case as a class action; (ii) declarations that Defendants' actions, as set out in the First Amended Complaint, constitute violations of California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*); California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), as well as a breach of express warranties, fraudulent inducement, and negligent misrepresentation; (iii) an award of damages, including actual, statutory, and punitive damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial; (iv) awards to Plaintiffs and the Class of their reasonable litigation expenses and attorneys' fees; (v) awards to Plaintiffs and the Class of pre- and post-judgment interest, to the extent allowable; (vi) awards of injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Class; and (vii) awards of such other and further relief as the Court deems reasonable and just.

**B.     Defendants' Position:** As set forth in their Answer, Defendants seek judgment in their favor on all counts as well as fees and costs.

## XII.   SETTLEMENT AND ADR

As noted above, on January 21, 2014 the Parties engaged in an all-day, in-person mediation presided over by Judge Rebecca Westerfield (ret.) of JAMS. Following that mediation, the Parties

continued negotiations and, ultimately, Plaintiffs and Sega reached an agreement in principle that, subject to Court approval, will fully resolve this matter.

### XIII. CONSENT TO MAGISTRATE JUDGE

Defendants previously declined to proceed before a Magistrate Judge for all purposes in this action. (Dkt. 18.)

### XIV. OTHER REFERENCES

At this time, the Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### XV. NARROWING OF ISSUES

At this time, the Parties are not aware of any issues that can be narrowed by agreement or by motion, and do not presently request bifurcation of issues, claims, or defenses.

### XVI. EXPEDITED SCHEDULE

The Parties do not believe that this case should be handled via the Court's Expedited Trial Procedure.

### XVII. SCHEDULING

If settlement is not reached, the Parties shall adhere to the scheduling Order entered by the Court on February 4, 2014, (Dkt. 49), subject to the resetting of any case management dates.

### XVIII. TRIAL

Both Plaintiffs and Defendants have requested a trial by jury of all matters that can be so tried. The Parties anticipate that a trial in this matter will require approximately eight Court days.

### XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

On April 29, 2013, Plaintiffs' counsel filed their certificate of interested entities or persons. (Dkt. 3.)  On June 14, 2013, Defendants filed their certificates of interested entities or persons. (Dkts. 16, 17.)

### XX. OTHER MATTERS

At this time, the Parties are unaware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this action.

Respectfully submitted,

**JOHN LOCKE and DAMION PERRINE**,
individually and on behalf of all others similarly situated,

Dated: May 1, 2014                By:   /s/ Benjamin S. Thomassen
                                        One of Plaintiffs' Attorneys

Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin S. Thomassen*
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Admitted *pro hac vice*

**SEGA OF AMERICA, INC.**,

Dated: May 1, 2014                By:   /s/ Karin A. Kramer
                                        One of Sega's Attorneys

Claude M. Stern (Bar No. 967737)
claudestern@quinnemanuel.com
Karin A. Kramer (Bar No. 87346)
karinkramer@quinnernanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive
5th Floor
Redwood Shores, California 94065
Tel: (650) 801-5000
Fax: (650) 801-5100

**GEARBOX SOFTWARE, L.L.C.**

Dated: May 1, 2014    By:    /s/ Victor Jih
                                     One of Gearbox's Attorneys

ROBERT M. SCHWARTZ (S.B. #117166)
rschwartz@omm.com
VICTOR JIH (S.B. #186515)
vjih@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California  90067-6035
Telephone:    (310) 553-6700
Facsimile:    (310) 246-6779

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

I, Benjamin S. Thomassen, am the ECF User whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-1, I hereby attest that all signatories have concurred in this filing.

Dated: May 1, 2014   By:   /s/ Benjamin S. Thomassen
                                      Benjamin S. Thomassen