ROBERT M. SCHWARTZ (S.B. #117166)
    rschwartz@omm.com
VICTOR JIH (S.B. #186515)
    vjih@omm.com
HARRISON A. WHITMAN (S.B. #261008 )
    hwhitman@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-6035
Telephone:     (310) 553-6700

Attorneys for Defendant Gearbox Software, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAMION PERRINE, and JOHN LOCKE, individually and on behalf of a class of similarly situated persons,<br><br>            Plaintiffs,<br><br>    v.<br><br>SEGA OF AMERICA, INC., and GEARBOX SOFTWARE, L.L.C.,<br><br>        Defendants. | Case No. 3:13-CV-01962 JD<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:    September 10, 2014<br>Time:          9:30 a.m.<br>Courtroom:    11<br>Judge:        Hon. James Donato |

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:  Notice is hereby given that defendant Gearbox Software, LLC ("Gearbox") hereby moves the Court to strike the class allegations of plaintiffs John Locke and Damion Perrine ("plaintiffs"), which are contained in paragraphs 101 through 109 of the First Amended Class Action Complaint (the "Complaint" or "FAC").  This Motion is scheduled to be heard on September 10, 2014, at 9:30 a.m., in Courtroom 11 of the above-captioned Court, at 450 Golden Gate Avenue, San Francisco, California 94102.

This Motion is brought pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(4), and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the argument of counsel, all other pleadings on file in this action, and any other matters properly considered by the Court at the hearing on this motion.


Dated: July 30, 2014.                           ROBERT M. SCHWARTZ
                                                VICTOR JIH
                                                O'MELVENY & MYERS LLP


                                                By:  */s/ Robert M. Schwartz*
                                                     Robert M. Schwartz
                                                Attorneys for Defendant Gearbox Software

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.    SUMMARY OF RELEVANT ALLEGATIONS ............................................................ 2

III.   THIS COURT SHOULD STRIKE THE CLASS ALLEGATIONS BECAUSE
THEY DEMONSTRATE THAT A CLASS CANNOT BE MAINTAINED ................... 4

IV.   THE PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE IT INCLUDES
MEMBERS WHO WERE NOT INJURED ...................................................................... 5

V.    THE PROPOSED CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(3)
BECAUSE INDIVIDUAL ISSUES WOULD PREDOMINATE ................................... 8

      A.    Factual Issues Unique To Individual Class Members Would Predominate
Over Those Common To The Class ...................................................................... 8

      B.    Legal Issues Unique To Individual Class Members Would Predominate ............ 11

VI.   THE PROPOSED CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(2) .......... 14

VII.  CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page

## <u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................................... 5

*Andrews v. AT & T Co.*,
  95 F.3d 1014 (11th Cir. 1996) ........................................................................................... 9

*Buckland v. Threshold Enters., Ltd.*,
  155 Cal. App. 4th 798 (2007) ...................................................................................... 8, 11

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) .............................................................................. 5, 9, 12, 13

*Castro Valley Union 76, Inc. v. Vapor Sys. Technologies, Inc.*,
  2012 WL 5199458 (N.D. Cal. Oct. 12, 2012) ............................................................ 8, 11

*Clark v. McDonald's Corp.*,
  213 F.R.D. 198 (D.N.J. 2003) ............................................................................................ 5

*Cole v. GMC*,
  484 F.3d 717 (5th Cir. 2007) ............................................................................................ 13

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*,
  189 F.R.D. 269 (S.D.N.Y. 1999) ....................................................................................... 4

*Field v. Mans*,
  516 U.S. 59 (1995) ............................................................................................................ 12

*Gariety v. Grant Thornton LLP*,
  368 F.3d 356 (4th Cir. 2004) .............................................................................................. 9

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................................ 5

*Grovatt v. St. Jude Med., Inc. (In re St. Jude Med., Inc.)*,
  522 F.3d 836 (8th Cir. 2008) .............................................................................................. 9

*Hadjavi v. CVS Pharmacy, Inc.*,
  2011 U.S. Dist. LEXIS 86341 (C.D. Cal. July 25, 2011) ............................................... 14

*Hovsepian v. Apple, Inc.*,
  2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ................................................................... 4

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*,
  288 F.3d 1012 (7th Cir. 2002) ......................................................................................... 12

*In re Control Data Corp. Sec. Litig.*,
  116 F.R.D. 216 (D. Minn. 1986) ...................................................................................... 13

*In re Hotel Tel. Charges*,
  500 F.2d 86 (9th Cir. 1974) ................................................................................................ 9

*Keegan v. Am. Honda Motor Co*,
    284 F.R.D. 504 (C.D. Cal. 2012) ........................................ 13

*Korea Supply Co. v. Lockheed Martin Corp*.,
    29 Cal. 4th 1134 (2003) ........................................ 12

*Liodas v. Sahadi*,
    19 Cal. 3d 278 (1977) ........................................ 13

*Lucas v. Dep't of Corr.*,
    66 F.3d 245 (9th Cir. 1995)........................................ 5

*Martin v. Dahlberg*,
    156 F.R.D. 207 (N.D. Cal. 1994) ........................................ 10

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)........................................ passim

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003)........................................ 14

*O'Shea v. Epson Am., Inc.*,
    2011 U.S. Dist. LEXIS 105504 (C.D. Cal. Sept. 19, 2011)........................................ 6

*Pfizer, Inc. v. Superior Court*,
    182 Cal. App. 4th 622 (2010) ........................................ 6, 7

*Route v. Mead Johnson Nutrition Co.*,
    2013 WL 658251 (C.D. Cal. Feb. 21, 2013)........................................ 4

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................ 4, 6, 8, 11

*Sanders v. Robinson Humphrey/Am. Express, Inc.*,
    634 F. Supp. 1048 (N.D. Ga. 1986) ........................................ 13

*Saxton v. Harris*,
    395 P.2d 71 (Alaska 1964)........................................ 13

*Schwartz v. Upper Deck Co.*,
    183 F.R.D. 672 (S.D. Cal. 1999)........................................ 15

*Sevidal v. Target Corp.*,
    189 Cal. App. 4th 905 (2010) ........................................ 6, 7

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ........................................ 8, 11

*Stubbs v. McDonald's Corp.*,
    224 F.R.D. 668 (D. Kan. 2004)........................................ 5

*Travelers Cas. & Sur. Co. of Am. v. Dunmore*,
    2010 WL 5200940 (E. D. Cal. Dec. 15, 2010) ........................................ 4

*United States v. Wang*,
    404 F. Supp. 2d 1155 (N.D. Cal. 2005) ........................................ 4

iii

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................ 5, 14, 15

*Wang v. OCZ Tech. Grp., Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) .......................................................................... 14

*Windham v. Am. Brands, Inc.*,
   565 F.2d 59 (4th Cir. 1977) ................................................................................... 5

**STATUTES**

Ala. Code 1975 § 8-19-10(f) (West 2012) ............................................................... 12

Fla. Stat. Ann. § 501.204(1) (West 2012) ............................................................... 12

Ga. Code Ann. § 10-1-372 (West 2012) .................................................................. 12

Ga. Code Ann. § 10-1-399(a) (West 2012) .............................................................. 12

Kan. Stat. Ann. § 50-626(a) (West 2012) ................................................................ 12

La. Rev. Stat. § 51:1409(A) .................................................................................... 12

Miss. Code Ann. § 75-24-15(4) (West 2012) ........................................................... 12

Miss. Code Ann. § 75-24-5(1) (West 2012) ............................................................. 12

Mont. Code Ann. § 30-14-133(1) ............................................................................ 12

N.J. Stat. § 56:8-19 ................................................................................................. 12

S.C. Code Ann. § 39-5-140(a) (West 2012) ............................................................. 12

S.C. Code Ann. § 39-5-20(a) (West 2012) ............................................................... 12

S.D. Codified Laws § 37-24-6 (West 2012) ............................................................. 12

Va. Code §§ 59.1-204(A-B) .................................................................................... 12

**OTHER AUTHORITIES**

5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* .................................. 4

**RULES**

Fed. R. Civ. P. 12(f) ................................................................................................. 4

Fed. R. Civ. P. 23(c)(1)(A) ...................................................................................... 4

Fed. R. Civ. P. 23(d)(4) ........................................................................................... 4

1   **I.      INTRODUCTION**

2           Defendant Gearbox Software, LLC ("Gearbox") moves to strike plaintiffs' class

3   allegations from the complaint because the allegations, on their face, demonstrate that plaintiffs'

4   claims cannot be maintained on a class basis.

5           The gravamen of plaintiffs' complaint is that they relied on pre-release demonstrations of

6   the *Aliens: Colonial Marines* video game when deciding to purchase it, and they were

7   disappointed with the final result.  Plaintiffs' allegations, even if true, have no merit as a class

8   action.  *Some* of the inherent defects in plaintiffs' case against Gearbox, specifically, have been

9   demonstrated in Gearbox's concurrently filed motion for summary judgment.  This Motion

10   demonstrates the legal impossibility of certifying plaintiffs' proposed class.

11           *First*, plaintiffs' proposed class is impermissibly overbroad because it includes putative

12   class members who were never exposed to, and who therefore never viewed, the allegedly

13   misleading game demonstrations on which the class-wide claims are premised.  A class that

14   includes putative class members who suffered no cognizable injury and have no standing to bring

15   any claim cannot be certified.  Here, plaintiffs' net was cast too wide.

16           *Second*, adjudication of plaintiffs' claims for fraudulent inducement, negligent

17   misrepresentation, breach of warranty, and violation of the Consumers Legal Remedies Act

18   would necessarily turn on individualized inquiries into each class members' reliance; what

19   was/wasn't viewed; what was/wasn't allegedly misleading for each viewer and why.  As

20   plaintiffs' allegations make plain, putative class members formulated purchasing decisions for

21   myriad reasons, not all of which involve game demonstrations (let alone any specific game

22   demonstration).  Worse still, those customers who were satisfied by the video game would be

23   swept into plaintiffs' proposed class.  Courts routinely deny certification of precisely these claims

24   for such reasons because they cannot be squared with Rule 23(b)(3)'s predominance requirement.

25           *Third*, common issues of law will not predominate because, under California's choice-of-

26   law test, the Court would have to apply the law of each class member's home state to the claims

27   of the purported nationwide class.  The significant variations among state laws governing fraud,

28

1  breach of warranty, negligent misrepresentation, and consumer protection would render a

2  nationwide class action under those laws unworkable and preclude a finding of predominance.

3      *Finally*, plaintiffs' claims cannot be certified under Rule 23(b)(2) because plaintiffs have

4  no standing to bring a claim for injunctive relief and, in any event, plaintiffs' primary claims for

5  individualized monetary relief are inappropriate for certification under Rule 23(b)(2).

6  ## II.    SUMMARY OF RELEVANT ALLEGATIONS

7      Plaintiffs John Locke and Damion Perrine allege that defendants deceived consumers into

8  buying *Aliens: Colonial Marines* by developing and marketing a promotional version of the

9  game, which plaintiffs call the "non-retail version," and then purportedly releasing a different

10  version of the game with inferior graphics and gameplay features.  According to plaintiffs,

11  defendants' plan was to market the promotional version to induce as many consumers as possible

12  to pre-purchase the game before their supposed scheme was revealed the day the game was first

13  offered for sale, February 12, 2013.  Dkt. 26 ¶¶ 14, 23, 25.

14      Plaintiffs allege that defendants demonstrated the "non-retail version" of the game at

15  several industry conferences, which plaintiffs allege are typically attended by "videogame

16  journalists and other industry insiders."  *Id*. ¶¶ 27–42.  Nowhere does the complaint allege that

17  either named plaintiff or any putative class member attended any of these conferences.  Plaintiffs

18  also allege that defendants uploaded portions of these demonstrations to Sega's website and to

19  YouTube.  *Id*. ¶¶ 37, 42.  Aside from their bare allegation that "thousands" of gamers viewed one

20  particular demonstration of the game online, plaintiffs fail to allege how many people saw—and

21  actually relied upon—any other online materials.  *Id*. ¶¶ 74, 103.

22      Even the allegations of plaintiffs Locke and Perrine concerning their own purchases

23  demonstrate the lack of commonality.  Locke says he is an "avid fan" of the *Aliens* franchise.  *Id*.

24  ¶ 75.  He alleges that he viewed videos depicting the "non-retail version" of the game online,

25  including "short form commercials" and the demonstration played at the E3 2012 conference.  *Id*.

26  ¶¶ 74–75.  He claims that, based on what he saw in those videos, he pre-ordered the game in the

27  fall of 2012, paying $100 for the "Collector's Edition."  *Id*. ¶¶ 76, 77.  Plaintiff Locke alleges

28  that, if he had known the game lacked certain graphic and gameplay features depicted in the

1  videos, he would either have paid less for it or not purchased it at all.  *Id.* ¶ 79.  Locke's story is

2  an individualized account of events that purportedly influenced a single, $100 purchase in

3  California for a specific game platform.  It is different from the account offered by Pennsylvania

4  resident Damion Perrine.

5       A fan of the *Aliens* franchise and "a long-time video gamer," Perrine says he paid $60 to

6  pre-order the game in 2009 *without having seen or heard about any video demonstrations* of the

7  game.  *Id.* ¶¶ 85–86.  In fact, according to his allegations, the first public demonstration of the

8  game would not take place until two years later, in 2011.  *Id.* ¶ 30.  At the time, Perrine was free

9  to cancel his order *and did so, obtaining a full refund* after reading that the release of the game

10  would be delayed.  *Id.* ¶ 88.  Perrine says he later changed his mind for the third time in 2011;

11  after seeing Sega's online video coverage of the E3 2011 conference, Perrine says he placed

12  another pre-order for the game (the second time in two years), putting down a $5 deposit.  *Id.*

13  ¶¶ 89–90.  According to Perrine, he proceeded with his purchase based on the "advanced graphics

14  and demonstrated gameplay sequences" depicted in this and other online videos.  *Id.* ¶¶ 90–94.

15  He claims he was unsatisfied with the game after playing it all day, and re-sold it later in the

16  evening for $17.  *Id.* ¶ 97.[1]

17       Plaintiffs assert six causes of action under California law: (1) violation of the Consumers

18  Legal Remedies Act ("CLRA"), *id.* ¶¶ 110–129; (2) violation of the Unfair Competition Law

19  ("UCL"), *id.* ¶¶ 130–141; (3) violation of the False Advertising Law ("FAL"), *id.* ¶¶ 142–148;

20  (4) breach of express warranty, *id.* ¶¶ 149–156; (5) fraud in the inducement, *id.* ¶¶ 157–165; and

21  (6) negligent misrepresentation, *id.* ¶¶ 166–175.

22       In spite of the inherently individualized nature of the claims, plaintiffs purport to bring

23  these claims on behalf of themselves and a proposed class of "[a]ll persons in the United States

24  who paid for a copy of the *Aliens: Colonial Marines* video game either on or before February 12,

---

[1] There are also questions about Mr. Perrine's suitability to serve as a class representative and his ability to meet Rule 23's adequacy and typicality requirements.  His legal name is Roger Damion Perrine.  He has been incarcerated in a Pennsylvania jail, where he currently awaits trial on charges of weapons possession, assault, and terroristic threats.  *See* https://ujsportal.pacourts.us/DocketSheets/CourtSummaryReport.ashx?docketNumber=CP-65-CR-0001272-2014 (last visited July 29, 2014).

MOTION TO STRIKE CLASS ALLEGATIONS
NO. 3:13-CV-01962 JD

2013," which plaintiffs now estimate to include some 150,000 consumers.  *Id*. ¶¶ 101, 103.

Notably, plaintiffs do not allege that the entire class, or even a majority of its members, was even

*aware* of the allegedly misleading video demonstrations of the game before they bought it.

Instead, plaintiffs merely allege that "if" a consumer watched any promotional video prior to

placing a pre-release order, he would have been exposed to the same misrepresentations about the

game's features as plaintiffs Locke and Perrine.  *Id*. ¶ 48.

## III.     THIS COURT SHOULD STRIKE THE CLASS ALLEGATIONS BECAUSE THEY DEMONSTRATE THAT A CLASS CANNOT BE MAINTAINED.

"Where the complaint demonstrates that a class action cannot be maintained on the facts

alleged, a defendant may move to strike class allegations prior to discovery."  *Sanders v. Apple,

Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009); *Hovsepian v. Apple, Inc.*, 2009 WL

5069144, at *2 (N.D. Cal. Dec. 17, 2009) (striking class allegations in action for fraudulent

concealment); *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21,

2013) ("where the matter is sufficiently obvious from the pleadings, a court may strike class

allegations" and is not required to defer its ruling until the certification stage).  The court may

strike class allegations pursuant to Rule 12 and Rule 23 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 23(c)(1)(A), 23(d)(4) (authorizing court to "require that the pleadings be amended

to eliminate allegations about representation of absent persons"); Fed. R. Civ. P. 12(f) (court

"may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter"); *Hovsepian*, 2009 WL 5069144, at *2 ("Under Rules 23(c)(1)(A) and

23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations

prior to discovery if the complaint demonstrates that a class action cannot be maintained.").[2]

---

[2] Although Rule 12(f) provides that a party should move to strike allegations within 21 days from being served with the pleading, it also permits a district court to issue orders to strike at any time, on the court's own initiative.  Consequently, this Court has discretion to consider and grant a motion to strike filed beyond the 21-day period, and should do so here.  *See, e.g.*, *United States v. Wang*, 404 F. Supp. 2d 1155, 1157 (N.D. Cal. 2005) (granting motion to strike filed several months after the deadline) ("In effect, the Court's discretion renders the twenty (20) day rule essentially unimportant.") (quoting *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. 1999); *Travelers Cas. & Sur. Co. v. Dunmore*, 2010 WL 5200940, at *3 (E. D. Cal. Dec. 15, 2010) ("[T]he court may consider and grant an untimely motion to strike where it seems proper to do so.") (citing 5A Wright & Miller, *Fed. Pract. and Proc.: Civil 2d* § 1380).

As the Supreme Court has noted, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  In such cases, "[t]he court need not wait for a motion for class certification," as "[f]ederal courts have used motions to strike to test the viability of a class at the earliest pleading stage of the litigation." *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003).  Where a court strikes class allegations, it need not grant leave to amend if it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

Plaintiffs bear the burden of establishing that their action satisfies all four requirements of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy), as well as their satisfaction of the conditions outlined in Rule 23(b)(2) or 23(b)(3).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); *Windham v. Am. Brands, Inc*., 565 F.2d 59, 72 n.6 (4th Cir. 1977); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).  That burden is a heavy one for any plaintiff, and it is insurmountable for these plaintiffs.  A trial court cannot permit an action to proceed as a class action unless it determines, after a "rigorous analysis," that all the requirements of Rule 23 are met.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011); *Gen. Tel. Co.*, 457 U.S. at 161.  As discussed below, plaintiffs' class allegations, on their face, fail to meet these requirements.[3]

## IV.     THE PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE IT INCLUDES MEMBERS WHO WERE NOT INJURED.

Plaintiffs' proposed class cannot be certified because it would necessarily include purchasers of the *Aliens: Colonial Marines* game who were never exposed to the alleged misrepresentations on which all of plaintiffs' causes of action are based, and who therefore never relied on any such representations or suffered any cognizable injury.

---

[3] Gearbox reserves its right to later challenge a motion for class certification on these and other grounds, should plaintiffs' class allegations survive this motion.

Plaintiffs' proposed class includes "[a]ll persons in the United States who paid for a copy of the *Aliens: Colonial Marines* videogame" through February 12, 2013—regardless of whether each putative class member ever saw or was ever exposed to the allegedly misleading game demonstrations.  Dkt. 26 ¶ 101.  But the law is clear that class members who never saw or were exposed to the alleged misrepresentations *could not* have suffered any cognizable injury; they therefore cannot bring a claim under the UCL, FAL, or any of plaintiffs' other claims for relief. *Sanders*, 672 F. Supp. 2d at 990–91 (striking proposed fraud class because it "necessarily includes" individuals "who either did not see or were not deceived by advertisements" and thus "would lack standing to bring these claims"); *Pfizer, Inc. v. Super. Ct.*, 182 Cal. App. 4th 622, 631 (2010) ("one who was not exposed to the alleged misrepresentations and therefore could not possibly have lost money or property as a result of the unfair competition is not entitled to restitution" under the UCL); *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 928 (2010) (affirming denial of certification of UCL and FAL claims that were "based on an alleged false representation to which the majority of class members were never exposed").

A proposed class whose membership includes those who suffered no injury cannot be certified because it includes members who lack standing and is impermissibly overbroad. *Sanders*, 672 F. Supp. 2d at 990–91 ("no class may be certified that contains members lacking Article III standing"); *Sevidal*, 189 Cal. App. 4th at 923–26 ("the proposed class was overbroad because a substantial portion of the class would have no right to recover on the asserted legal claims").  Moreover, the lack of classwide exposure to the alleged misrepresentation precludes a finding that common issues predominate. *O'Shea v. Epson Am., Inc.*, 2011 U.S. Dist. LEXIS 105504, at *22–32 (C.D. Cal. Sept. 19, 2011).  The recent decision by the Ninth Circuit in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), supports Gearbox's point.

In *Mazza*, a case involving similar claims of fraudulent inducement, the Ninth Circuit held that the relevant class must at the very least be defined "in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading," and vacated the district court's order granting certification. *Id*. at 596.  In *Pfizer*, where the trial court had certified a class of all individuals who had purchased Listerine in California over a six-month

period, the Court of Appeal vacated the certification order, finding that those "who w[ere] not exposed to the alleged misrepresentations and therefore could not possibly have lost money or property as a result of the unfair competition [are] not entitled to restitution."  182 Cal. App. 4th at 631.  And in *Sevidal*, 189 Cal. App. 4th at 920–22, the Court of Appeal affirmed an order denying certification of a class of Target customers who had bought merchandise that was mislabeled as "Made in USA," where most class members were likely never exposed to the alleged misrepresentations, which were made on Target's website.  *Id.* at 912.  The Court of Appeal concluded that the proposed class was impermissibly overbroad "because a substantial portion of the class would have no right to recover on the asserted legal claims."  *Id.* at 923.

The decisions in *Mazza*, *Pfizer*, and *Sevidal* are directly applicable here and foreclose certification of plaintiffs' claims.  That is because plaintiffs do not allege that the approximately 150,000 consumers who they claim pre-ordered the game *even saw* or *were exposed to* the promotional materials at issue.  Plaintiffs allege that the game demonstrations were shown at tradeshows in 2011 and 2012.  Dkt. 226 ¶¶ 27–42.  By plaintiffs' own account, the "audience" at these shows "often consist[ed] of videogame journalists and other industry insiders."  *Id.* ¶ 28.  There is no allegation that consumers (much less actual class members) attended *any* of these trade events, and the news articles referenced in the complaint suggest that industry insiders are the primary participants at these events.  *Id.* ¶ 12 n.9 ("At E3 2011 … [d]roves of game journalists, GameStop managers, and their kids, they always manage to somehow sneak into the show, came to see the off-hands demo.").  Although plaintiffs argue that the demonstrations were made available online, they do not allege that *any* class members—besides themselves—*actually* viewed these demonstrations before purchasing the game.  *See, e.g.*, *id.* ¶ 74 (alleging only that "other gamers," not other pre-release purchasers, viewed the demonstration at E3 2012).  In fact, plaintiff Perrine placed his first order for the game in 2009—two years before he alleges any demonstration was produced or disseminated.  *Id.* ¶¶ 89–90.  His story illustrates why it would be inappropriate to certify class-wide claims for *all* based upon the speculative viewership of *some*.

1

**V.      THE PROPOSED CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(3)
BECAUSE INDIVIDUAL ISSUES WOULD PREDOMINATE.**

2

3          Plaintiffs' allegations also preclude a finding of predominance under Rule 23(b)(3).

4    "Under Rule 23(b)(3), a plaintiff must demonstrate the superiority of maintaining a class action

5    and show 'that the questions of law or fact common to class members predominate over any

6    questions affecting only individual members.'" *Mazza* , 666 F.3d at 589.  Plaintiffs here cannot

7    meet this standard because (1) plaintiffs' claims would require inquiries into whether individual

8    class members actually viewed and relied upon any of the alleged misrepresentations, and

9    (2) California law cannot be applied to the claims of plaintiffs' proposed nationwide class, and

10   those claims would therefore have to be adjudicated under the laws of each putative class

11   member's home jurisdiction.  In short, individualized factual and legal determinations would

12   overwhelm any issues common to the class.

13
              **A.      <u>Factual Issues Unique To Individual Class Members Would Predominate
              Over Those Common To The Class.</u>**
14

15         To prevail on their claims for fraudulent inducement, negligent misrepresentation, breach

16   of warranty, and violation of the CLRA, plaintiffs must prove that class members viewed and

17   relied on the allegedly misleading demonstrations in deciding to purchase the *Aliens: Colonial*

18   *Marines* game.  *Castro Valley Union 76, Inc. v. Vapor Sys. Technologies, Inc*., 2012 WL

19   5199458, at *10–11 (N.D. Cal. Oct. 12, 2012) (negligent misrepresentation); *Stearns v. Select*

20   *Comfort Retail Corp*., 763 F. Supp. 2d 1128, 1153 (N.D. Cal. 2010) (express warranty); *Sanders*,

21   672 F. Supp. 2d at 991 (fraud); *Buckland v. Threshold Enters., Ltd*., 155 Cal. App. 4th 798, 810

22   (2007) (CLRA).  Not surprisingly, fraud- and warranty-based claims like those asserted here

23   "rarely are certified" because questions of exposure, reliance, and materiality require

24   individualized inquiries into what information each claimant received, and whether he relied on

25   that information in purchasing the product.  *See Sanders*, 672 F. Supp. 2d at 991 ("If the proposed

26   class were to be certified, the Court would be forced to engage in individual inquiries of each

27   class member with respect to materiality of the statement, whether the member saw [the

28   defendant's] advertisements or visited [the defendant's] website, and what caused the member to

make the purchase.").  Thus, the overwhelming consensus among the circuit courts is that individual issues of exposure and reliance ordinarily pose an insuperable obstacle to class certification.  *See, e.g.*, *Castano*, 84 F.3d at 745 ("[A] fraud class action cannot be certified when individual reliance will be an issue."); *Grovatt v. St. Jude Med., Inc. (In re St. Jude Med., Inc.)*, 522 F.3d 836, 838 (8th Cir. 2008) ("Because proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment."); *Gariety v. Grant Thornton LLP*, 368 F.3d 356, 362 (4th Cir. 2004) ("Because proof of reliance is generally individualized to each plaintiff allegedly defrauded, fraud and negligent misrepresentation claims are not readily susceptible to class action treatment, precluding certification of such actions as a class action."); *Andrews v. AT & T Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996) (decertifying class in part because "the plaintiffs would … have to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages"); *In re Hotel Tel. Charges*, 500 F.2d 86, 89 (9th Cir. 1974) (reversing order certifying class, noting that, "[w]ithout eliminating or eroding the traditional or statutory elements of a fraud action, there is no possibility that common questions can predominate over individual ones").

The Ninth Circuit's decision in *Mazza*, 666 F.3d 581 (9th Cir. 2012), is instructive.  The plaintiffs in *Mazza* claimed that Honda had misrepresented the benefits of its optional automatic braking system in a "mass advertising" campaign involving television commercials, magazine advertisements, brochures, and promotional videos that were presented on its website and at dealerships.  *Id*. at 586–87.  The plaintiffs in that case, like plaintiffs here, argued that common factual issues like the nature of Honda's representations and its knowledge of their truth or falsity would predominate.  *Id*. at 587–88; Dkt. 26 ¶ 106(a)–(d).  The Ninth Circuit disagreed, noting that an "individualized case must be made for each member showing reliance" as the class "almost certainly includes members who were not exposed to, and therefore could not have relied on, Honda's allegedly misleading advertising material."  *Id*. at 595–96.  The Ninth Circuit vacated the district court's certification of the plaintiffs' UCL, FAL, and CLRA claims.  *Id*. at 596.

1    The court's decision in *Martin v. Dahlberg*, 156 F.R.D. 207, 211 (N.D. Cal. 1994),

2    presents similar facts and supports the same conclusion.  In *Martin*, the defendant conducted a

3    national advertising campaign for its hearing aids that promoted the message that the device

4    "reduces background noise" and "boosts speech"—claims that the plaintiffs alleged were false.

5    The court denied certification of plaintiffs' fraud and negligent misrepresentation claims,

6    concluding that "highly individualized questions of reliance" would overshadow any common

7    issues.  *Id*. at 216–17.  As the court explained, a "myriad of factors may have influenced the

8    decisions of putative class members to purchase" the hearing aids, including "brand

9    identification" and "word of mouth"—all having nothing to do with the defendant's allegedly

10   fraudulent conduct.  *Id*. at 215.

11   The same analysis applies here.  Defendants' liability here would turn on individualized

12   determinations as to whether each class member saw the representations, believed them, and

13   would have made purchasing decisions for reasons unrelated to the claims.  As in both *Mazza* and

14   *Martin*, the evidence in support of these determinations would be "highly individualized."  *Id*. at

15   216–17.

16   Plaintiffs' allegations reveal that there are many reasons any given class member would

17   have placed a pre-order for the game that have nothing to do with the demonstrations.  Dkt. 26

18   ¶ 19.  For instance, the Complaint alleges that the game could "sell itself" (a) based solely on its

19   association with the popular "*Aliens*" franchise, (b) based on the fact that it was developed by

20   Gearbox, whose recent releases had "garnered excellent industry reviews and an overwhelmingly

21   positive reception from gamers," and/or (c) based on the fact that the game was produced by

22   Sega, "a company with a well-known heritage within the video game industry."  *Id*.  In fact,

23   plaintiff Damion Perrine says he placed his first pre-order for the game in 2009—years before

24   plaintiffs claim the allegedly misleading demonstrations were even created—apparently because

25   he is a fan of the *Aliens* franchise.  *Id*. ¶¶ 85–86.  Still other class members will have their own

26   independent reasons for purchasing the game pre-release.

27   For the same reasons, plaintiffs' claims for fraud, negligent misrepresentation, breach of

28   express warranty, and violation of the CLRA, which will all turn on plaintiff-specific

MOTION TO STRIKE CLASS ALLEGATIONS
NO. 3:13-CV-01962 JD

1    determinations of materiality and reliance, cannot be certified.  *See Castro Valley Union 76*, 2012

2    WL 5199458, at *10–11 (denying class certification of negligent misrepresentation claim because

3    "it will require an individualized inquiry into, for example, what verbal or written representations

4    were made to the members of the class, when those representations were made, and whether the

5    class members relied on them"); *Stearns*, 763 F. Supp. 2d at 1153 (striking class allegations of

6    express warranty claims because they "involve elements that are individual to each purported

7    class member, such as ... reliance"); *Sanders*, 672 F. Supp. 2d at 991 (striking class allegations of

8    fraud because it requires the "functional[] equivalent" of a "reliance element"); *Buckland*, 155

9    Cal. App. 4th at 810 (CLRA requires that plaintiffs "establish … they actually relied on the

10   relevant representations and omissions").[4]

11           **B.      Legal Issues Unique To Individual Class Members Would Predominate.**

12           In addition to the individualized factual issues, the variation among the laws applicable to

13   the different class members would also preclude certification.  The members of plaintiffs'

14   proposed class could be located in any of 51 different jurisdictions.  Dkt. 26 ¶ 101.  Although

15   plaintiffs seek to apply California law to the claims of the purported nationwide class, the Ninth

16   Circuit in *Mazza* recognized that, under California's choice-of-law test, the law of the jurisdiction

17   in which each class member received the alleged misrepresentation and made his purchase has the

18   predominant interest in applying its laws.  *Mazza*, 666 F.3d at 593–95 (holding the "laws of the

19   jurisdiction in which the transaction took place" should apply, despite the fact that the sole

20   defendant Honda was a California corporation).[5]  Thus, the Court would have to apply the law of

21   each putative class member's home jurisdiction to the claims of the putative nationwide class.  As

22   in *Mazza*, "[b]ecause the law of multiple jurisdictions applies here to any nationwide class …,

23

---

24   [4] Plaintiffs attempt to state a claim based on fraudulent "omissions."  *See* Dkt. 26 ¶¶ 120, 158–
     162.  They allege that defendants were under a duty to disclose that their alleged

25   misrepresentations were false.  *Id.* ¶ 120.  This effort to recast their claims fails.  As the Ninth
     Circuit noted in rejecting a similar effort in *Mazza*, for "everyone in the class to have been

26   exposed to the omissions … it is necessary for everyone in the class to have viewed the allegedly
     misleading advertising."  666 F.3d at 596.

27   [5] Even if the claims *could* be resolved as a matter of California law, Gearbox demonstrates in its
     concurrently filed motion for partial summary judgment that Gearbox is entitled to prevail now

28   on plaintiffs' three California statutory claims and their common law express warranty claim.

1  variances in state law overwhelm common issues and preclude predominance for a single

2  nationwide class." *Id.* at 596; *see also In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288

3  F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by

4  the same legal rules.").

5      For instance, state consumer protection laws vary in numerous, material respects.  While

6  some states' consumer protection laws make only "deceptive" conduct actionable, others apply

7  more broadly to "unfair" or "unconscionable" behavior.[6]  In at least seven jurisdictions, private

8  claims must be asserted on an individual basis, which specifically forecloses the use of class

9  actions by private litigants.[7]  State consumer protection laws also vary significantly in terms of

10  the remedies and damages available.  In California, for example, the UCL does not permit

11  recovery of damages at all, limiting recovery to injunctive relief and restitution.  *Korea Supply*

12  *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  The New Jersey Consumer Fraud

13  Act, on the other hand, permits recovery of treble damages.  N.J. Stat. § 56:8-19.  The Ninth

14  Circuit cataloged many of these differences in *Mazza* and concluded that "each class member's

15  consumer protection claim should be governed by the consumer protection laws of the

16  jurisdiction in which the transaction took place," which it found warranted denial of class

17  certification.  666 F.3d at 594.

18      States also follow different rules for fraud claims, which compromise plaintiffs' fifth

19  claim for relief.  As the Supreme Court noted in *Field v. Mans*, 516 U.S. 59 (1995), states have

20  adopted at least three distinct reliance standards for fraud:  "actual," "justifiable," and

21  "reasonable" reliance.  *Id.* at 72–73.  This variation was part of the reason for the Fifth Circuit's

22  denial of class certification of nationwide fraud claims in *Castano v. American Tobacco Co.*, 84

23

24  [6] *Compare, e.g.*, Ga. Code Ann. § 10-1-372 (West 2012); Kan. Stat. Ann. § 50-626(a) (West
   2012); S.D. Codified Laws § 37-24-6 (West 2012), *with* Fla. Stat. Ann. § 501.204(1) (West 2012)

25  (listing "unconscionable acts or practices"); Miss. Code Ann. § 75-24-5(1) (West 2012) ("Unfair
   methods of competition … are prohibited"); S.C. Code Ann. § 39-5-20(a) (West 2012) (same).

26  [7] Ala. Code 1975 § 8-19-10(f) (West 2012) ("A consumer or other person bringing an action
   under this chapter may not bring an action on behalf of a class ...."); Ga. Code Ann. § 10-1-399(a)

27  (West 2012) (same); La. Rev. Stat. § 51:1409(A) (same); Miss. Code Ann. § 75-24-15(4) (West
   2012); Mont. Code Ann. § 30-14-133(1); S.C. Code Ann. § 39-5-140(a) (West 2012); Va. Code

28  §§ 59.1-204(A-B).

F.3d 734, 743 (5th Cir. 1996); *see also Sanders v. Robinson Humphrey/Am. Express, Inc.*, 634 F. Supp. 1048 (N.D. Ga. 1986) (canvassing differences in scienter and reliance among state common law fraud claims).  Even the burden of proof required for fraud differs among the states: some require that it be proven by a preponderance of the evidence, while most demand proof by clear and convincing evidence.  *See, e.g.*, *Saxton v. Harris*, 395 P.2d 71, 72 (Alaska 1964); *Liodas v. Sahadi*, 19 Cal. 3d 278, 287–88 (1977).

The variation is even greater among laws governing express warranties.  In *Keegan v. American Honda Motor Co*, 284 F.R.D. 504 (C.D. Cal. 2012), for example, the court found that a class of plaintiffs from just three different states failed to demonstrate predominance of common legal issues on a claim for breach of express warranty given the different reliance and pre-suit notice requirements in those states.  *Id*. at 545–49; *see also Cole v. GMC*, 484 F.3d 717 (5th Cir. 2007) (denying class certification after cataloging nationwide variations in reliance, notice, and privity requirements on claim for breach of express warranty).

There are material differences among the various states' treatment of claims for negligent misrepresentation as well.  For example, the district court in *In re Control Data Corp. Securities Litigation*, 116 F.R.D. 216 (D. Minn. 1986), refused to certify a multistate class on a claim for negligent misrepresentation after finding that, in some states, the claim can be brought by anyone whose reliance is reasonably foreseeable, while something akin to privity is required in other states.  *Id*. at 223 n.6.  This raises the distinct likelihood that differences between California and other states' laws would arise with respect to Gearbox (which never sold the game to any of the plaintiffs or putative class members), but not with respect to Sega (which was responsible for publication and sales), further complicating the choice-of-law analysis.  *See* Gearbox's concurrently filed Motion for Partial Summary Judgment at Section IV.A.  The legal predominance inquiry is not confined to the elements of these causes of action.  Affirmative defenses, like the applicability of the statute of limitations, also undercut predominance.  *See, e.g.*, *Castano*, 84 F.3d at 743 n.15.

In light of these wide-ranging differences among the applicable state laws, common questions of law will not predominate.

1    **VI.    THE PROPOSED CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(2).**

2              In addition to Rule 23(b)(3), plaintiffs seek certification under Rule 23(b)(2).  Plaintiffs

3    cannot meet the standards for certification under Rule 23(b)(2) for three reasons.

4              First, certification under Rule 23(b)(2) is available only when an injunction, rather than

5    monetary damages, is the primary form of relief sought.  Dkt. 26 ¶ 108; *Wal-Mart*, 131 S. Ct. at

6    2557 (claims for monetary relief may only be certified where it is "incidental to the injunctive or

7    declaratory relief"); *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003) ("[I]n order to permit

8    certification under [Rule 23(b)(2)], the claim for money damages must be secondary to the

9    primary claim for injunctive or declaratory relief."); *Hadjavi v. CVS Pharmacy, Inc*., 2011 U.S.

10   Dist. LEXIS 86341, at *19 (C.D. Cal. July 25, 2011) ("Considering that Plaintiffs' primary

11   objective is monetary relief, the Court finds that class certification under Rule 23(b)(2) to be

12   inappropriate.").  Here, the injunctive relief sought is not merely "secondary" to plaintiffs' claim

13   for monetary damages; as explained in Gearbox's motion for summary judgment, plaintiffs here

14   do not even have a basis to seek such injunctive relief.  *See Wang v. OCZ Tech. Grp., Inc.*, 276

15   F.R.D. 618, 626–27 (N.D. Cal. 2011) (finding that plaintiff lacked standing to enjoin marketing

16   practices absent allegations he would purchase from defendant in the future); *see also* Motion for

17   Partial Summary Judgment at Section IV.B.1.  Moreover, even if the Complaint did state a viable

18   claim for injunctive relief (which it does not), certification under Rule 23(b)(2) still would be

19   inappropriate because such claims are secondary to the money damages plaintiffs seek.  *Molski*,

20   318 F.3d at 947; *Hadjavi*, 2011 U.S. Dist. LEXIS 86341, at *19.

21             Second, the Supreme Court has held that Rule 23(b)(2) "does not authorize class

22   certification when each class member would be entitled to an individualized award of monetary

23   damages."  *Wal-Mart*, 131 S. Ct. at 2557.  Plaintiffs' allegations suffer here, as well.  Plaintiff

24   Locke, for instance, bought the game for $100, while plaintiff Perrine claims he paid $60 for the

25   game, reselling it for $17 after he played it.  Dkt. 26 ¶¶ 79, 93, 97.  Variations such as these will

26   require evidence from each putative class member regarding his claimed damages.  While

27   differences in damages calculations alone do not preclude certification, when such "questions are

28

MOTION TO STRIKE CLASS ALLEGATIONS
NO. 3:13-CV-01962 JD

1    layered onto the other issues of fact and law," they reinforce a finding that class treatment is

2    inappropriate. *Schwartz v. Upper Deck Co*., 183 F.R.D. 672, 680 (S.D. Cal. 1999).

3         Finally, the Supreme Court suggested in *Wal-Mart* that even claims seeking incidental

4    monetary damages may not be certifiable under Rule 23(b)(2) because certification of a Rule

5    23(b)(2) class may violate the due process rights of absent class members—who would otherwise

6    have the right to individualized damages determinations or, under Rule 23*(b)(3)*, to notice and an

7    opportunity to opt out. *Wal-Mart*, 131 S. Ct. at 2557–59 (reasoning that the absence of notice and

8    opt-out provisions in a Rule 23(b)(2) class "provides additional reason not to read Rule 23(b)(2)

9    to include the monetary claims" even when combined with a "'predominating request' … for an

10   injunction").  These due process concerns further render plaintiffs' claims unsuitable for

11   certification under Rule 23(b)(2).

12   **VII.    CONCLUSION**

13        For the foregoing reasons, the Court should strike plaintiffs' class allegations because

14   those allegations clearly establish that plaintiffs' proposed class cannot be certified.

15

16   Dated: July 30, 2014.                          Respectfully submitted,

17                                                  ROBERT M. SCHWARTZ
                                                    VICTOR JIH
18                                                  HARRISON A. WHITMAN
                                                    O'MELVENY & MYERS LLP
19

20                                                  By: */s/ Robert M. Schwartz*
                                                          Robert M. Schwartz
21                                                  Attorneys for Defendant Gearbox Software

22

23

24

25

26

27

28