ROBERT M. SCHWARTZ (S.B. #117166)
   rschwartz@omm.com
VICTOR JIH (S.B. #186515)
   vjih@omm.com
HARRISON A. WHITMAN (S.B. #261008 )
   hwhitman@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-6035
Telephone:    (310) 553-6700

Attorneys for Defendant Gearbox Software, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

DAMION PERRINE, and JOHN LOCKE, individually and on behalf of a class of similarly situated persons,

   Plaintiffs,

v.

SEGA OF AMERICA, INC., and GEARBOX SOFTWARE, L.L.C.,

   Defendants.

Case No. 3:13-CV-01962 JD

**GEARBOX SOFTWARE'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS CLAIMS AND WITHDRAW CLASS REPRESENTATIVE**

Hearing Date:   September 18, 2014
Time:           2:00 p.m.
Courtroom:      11
Judge:          Hon. James Donato

For more than a year, plaintiff Damion Perrine has spearheaded this lawsuit's attacks on defendant Gearbox and its senior executives over the *Aliens: Colonial Marines* video game. Perrine's attacks centered on the marketing efforts of the game's publisher, Sega, even though Gearbox's role was to develop the game for Sega, on a work-for-hire basis. Perrine now seeks to quietly walk away from the case he so publicly launched, and thereby improperly deprive Gearbox of its right to obtain a favorable adjudication of his claims, on the merits, through Gearbox's pending motion for partial summary judgment. And by seeking a dismissal *without* prejudice, Perrine asks to preserve his right to recover on his claims, either as an absent class member or by filing another lawsuit. None of that is appropriate.

The dismissal request is not only inappropriate, it is perplexing. The record is unclear as to whether, or even why, Perrine himself would now wish to dismiss his claims, particularly because it means that he will forfeit a $2,500 incentive payment under the settlement his lawyers had struck with Sega *before* they sought to dismiss him. At the June 26 Case Management Conference ("CMC"), when Perrine's lawyers moved to have their lead client removed from his own case, the Court voiced its own skepticism: "Now, tell me what is the deal behind, why is that happening?" (*See* Unofficial Transcript, at 1, Ex. A to Schwartz Decl.) Plaintiffs' counsel responded, "… he just went out of contact with us, Judge … We did some investigations of our own, trying to locate him … he's just dropped off our radar, Judge." *Id.* at 2. In short, the justification for dropping Perrine from his case was that Perrine's lawyers could not locate him.

However, the July 30 declaration that plaintiffs' counsel filed in support of their effort to jettison Perrine from his case, reveals facts that his lawyers knew at the CMC but chose not to share with the Court or Gearbox. That declaration describes a flurry of activity in June, designed to locate a "missing" client who had "dropped off" his lawyers' radar ahead of the June 26 CMC. Except that counsel's July 30 declaration offered this new fact: "On June 16, 2014, during the course of our investigation into Mr. Perrine's whereabouts, my firm learned that Mr. Perrine had been arrested on June 4, 2014 in Westmoreland County, Pennsylvania." Dkt. 69-1, ¶ 4. June 16 preceded the CMC by ten days. Public records, which Gearbox easily found after the CMC, show

that Perrine had been incarcerated in that location since June 7.[1]  Thus, Perrine's lawyers knew ahead of the CMC that Perrine had been arrested in early June, but did not disclose this to the Court (or to Gearbox, before seeking Gearbox's consent to the dismissal).[2]

Counsels' request to dismiss their client continues to lack sufficient evidence.  Perrine himself has filed no declaration to establish any of these facts.  Instead, his counsel—alone—surmises that, "due to his legal troubles, and his inability to stay in ready contact" with counsel, Perrine has "*agreed* and *acknowledged* that he could not proceed as a class representative in this matter."  Dkt. 69-1, ¶ 12 (emphasis added).  The notion that Perrine "agreed" and "acknowledged" not to proceed with his case tells the Court that *his counsel* initiated and suggested that result.  Nothing submitted with this motion indicates that *Perrine* himself asked to dismiss his claims, or that they told him that he would be forfeiting a proposed $2,500 "incentive payment" from Sega.  Given the limited information plaintiffs' counsel provided before filing this motion, which includes nothing from Perrine himself, Gearbox was not comfortable stipulating to counsels' request for Perrine's dismissal when asked to do so before the filing of this motion.

Finally, and regardless of whether Perrine *wants* to dismiss his claims, Gearbox is entitled to an adjudication of its motions—both of which preceded this motion to dismiss.[3]  Gearbox will suffer a "plain legal prejudice" if Perrine is dismissed while Gearbox's motions are pending.  *See BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 2011 WL 2938512, at *2 (D. Haw. July 18, 2011).  Courts recognize that "the avoidance of an adverse ruling is an abusive reason to seek dismissal," *White v. Donley*, 2008 WL 4184651, at *3 (C.D. Cal. Sept. 4, 2008), and on that issue, courts consider whether "summary judgment has been filed by the opposing party." *BlueEarth*

---

[1] https://ujsportal.pacourts.us/DocketSheets/CourtSummaryReport.ashx?docketNumber=CP-65-CR-0001272-2014.  According to that docket, Perrine is awaiting trial on charges of weapons possession, terroristic threats, and assault.

[2]  The grounds for seeking Perrine's dismissal at the June 26 CMC (*i.e.*, Perrine's disappearance) should have become moot the instant his lawyers learned where he was.  But that did not happen.  To the contrary, the effort to oust Perrine persists on the newfound basis that an inmate awaiting trial cannot maintain a legal action, even one merely pending settlement approval.  No statement from Perrine has been given in support of that assertion.

[3] Gearbox notified plaintiffs' counsel on July 22, 2014—eight days before plaintiffs filed this motion to dismiss—that Gearbox would be filing a motion for summary judgment and a motion to strike the class allegations, and detailed the grounds for the summary judgment motion.  *See* Schwartz Decl., ¶ 3.

1  *Biofuels*, 2011 WL 2938512, at *2 (citing *United States v. Berg,* 190 F.R.D. 539, 543 (E.D. Cal.
2  1999)).  In *In re Sizzler Restaurants International, Inc.*, for example, the court denied a request to
3  dismiss claims without prejudice because the defendant would be denied "resolution of [her]
4  motion for summary judgment" and "effectively foreclosed from bringing a subsequent action for
5  malicious prosecution." 262 B.R. 811, 823 (C.D. Cal. 2001).

6        As explained in Gearbox's motion for summary judgment, there are fundamental defects
7  within plaintiffs' claims warranting adjudication on the merits.  Beyond that, the allegations of
8  Perrine's complaint highlight the individualized nature of the claims, suggesting that this motion
9  to dismiss is a tactical move by which counsel hope to mask those fundamental problems before
10  they seek class certification against Gearbox.[4]  A dismissal under such circumstances is
11  inappropriate.  *See*, *e.g.*, *Miller v. Mercedes-Benz USA, LLC*, 2009 WL 1393488, *2 (C.D. Cal.
12  May 15, 2009) (disapproving of a "bait-and-switch tactic" with the "class representative"); *Lidie*
13  *v. California*, 478 F.2d 552, 555 (9th Cir. 1973) (disapproving of "back-door attempt to begin the
14  action anew" where the "original plaintiffs were never qualified to represent the class").

15        Class actions raise serious due process concerns for defendants and absent class members.
16  The issues surrounding Perrine's claims, suitability to serve as a class representative, and his
17  potential exit from the case should not simply be swept under the rug.  Under the circumstances,
18  Gearbox opposes this request for a dismissal.  If Perrine is to be permitted to exit the litigation,
19  however, at a minimum his dismissal should *with* prejudice and without any possible effect on
20  Gearbox's other rights (including, *inter alia*, the right to seek fees and costs).

---

[4] For example, in his complaint, Perrine admits that he pre-ordered the game in 2009—*two years* before he claimed to have seen the allegedly misleading video demonstrations—entirely because he was a fan of the *Aliens* franchise. Dkt. 26 ¶¶ 85-86.  This admission does more than undermine Perrine's professed reliance upon any demonstrations; it spotlights the need for individual inquiries into each potential class member's reasons for pre-ordering the game.

3  OPPOSITION TO MOTION TO DISMISS
NO. 3:13-CV-01962 JD

1 | Dated: August 13, 2014.  Respectfully submitted,

ROBERT M. SCHWARTZ
VICTOR JIH
HARRISON A. WHITMAN
O'MELVENY & MYERS LLP

By: */s/ Robert M. Schwartz*
      Robert M. Schwartz
Attorneys for Defendant Gearbox Software