1  ROBERT M. SCHWARTZ (S.B. #117166)
     rschwartz@omm.com
2  VICTOR JIH (S.B. #186515)
     vjih@omm.com
3  HARRISON A. WHITMAN (S.B. #261008)
     hwhitman@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, Seventh Floor
5  Los Angeles, California  90067-6035
   Telephone:    (310) 553-6700
6
   Attorneys for Defendant Gearbox Software, LLC
7

8  **UNITED STATES DISTRICT COURT**

9  **NORTHERN DISTRICT OF CALIFORNIA**

10  **SAN FRANCISCO DIVISION**

11

12  DAMION PERRINE, and JOHN LOCKE, individually and on behalf of a class of similarly situated persons,

   Plaintiffs,

   v.

   SEGA OF AMERICA, INC., and GEARBOX SOFTWARE, L.L.C.,

   Defendants.

Case No. 3:13-CV-01962 JD

**DECLARATION OF ROBERT M. SCHWARTZ ON BEHALF OF DEFENDANT GEARBOX'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS CLAIMS AND WITHDRAW CLASS REPRESENTATIVE**

Hearing Date:   September 18, 2014
Time:           2:00 p.m.
Courtroom:      11
Judge:          Hon. James Donato

## DECLARATION OF ROBERT M. SCHWARTZ

I, ROBERT M. SCHWARTZ, do hereby declare as follows:

1. I am an attorney duly licensed to practice law in the State of California. I am a partner at the law firm of O'Melveny & Myers LLP, attorneys of Defendant Gearbox Software. I submit this declaration in support of Gearbox Software's Opposition to Plaintiffs' Motion to Dismiss Claims and Withdraw Class Representative. I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify hereto.

2. Attached hereto as Exhibit A is a true and correct copy of a transcript I had prepared from an electronic copy of the official tape recording of the June 26, 2014 Case Management Conference, which the Court sent to us in response to our request for a transcript of that conference. I attended the June 26, 2014 conference and believe the transcript accurately reflects what the Court and each of the appearing attorneys said during the conference.

3. On July 22, 2014, I spoke with plaintiffs' counsel, Rafey Balabanian of Edelson PC, about this case. I told Mr. Balabanian that Gearbox was planning to file, before the end of July, a motion for partial summary judgment on the plaintiffs' first four claims for relief and a motion to strike the class allegations from the First Amended Complaint. I explained the grounds for our attack on each claim for relief and the bases of the motion to strike.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct. Executed this 13th day of August 2014 at Los Angeles, California.

_____
Robert M. Schwartz

# EXHIBIT A

**Damion Perrine v. Sega of America, Inc., et. al.**
**U.S. District Court, Northern District of California**

| | |
|---|---|
| **CLERK:** | Calling Civil 13-1962, Perrine v. Sega of America. Counsel, please come forward and state your appearances for the court. |
| **MR. THOMASSEN:** | Good morning, Your Honor, Ben Thomassen here for plaintiffs Perrine, Mr. Locke and Putative Class. |
| **JUDGE:** | Welcome. |
| **MS. KRAMER:** | Sharon Kramer for the defendant Sega of America. |
| **JUDGE:** | Welcome. |
| **MR. SCHWARTZ:** | Good afternoon, Your Honor, Robert Schwartz for defendant Gearbox Software. |
| **JUDGE:** | Okay. So you settled, is that right? |
| **MR. THOMASSEN:** | Just about, Your Honor, we're still trying to -- |
| **JUDGE:** | Remember, we're being taped, so you have to use your name. |
| **MR. THOMASSEN:** | I apologize, Ben Thomassen, Your Honor. We've reached a settlement in principle. All that's left is getting some signatures on it. As Your Honor might have seen earlier today, we actually filed a second amended class action complaint and the only difference between that version of the pleadings and the one that Your Honor's probably more familiar with is that Mr. Perrine was removed as a representative plaintiff and so that case will be proceeding onwards with respect to -- |
| **JUDGE:** | Now, tell me what is the deal behind, why is that happening? |
| **MR. THOMASSEN:** | Sure, Your Honor, again, Ben Thomassen. Mr. Perrine was the original plaintiff in this case. He's been in contact with us over the course of the litigation and he had been participating in the settlement negotiations. He approved all aspects of the deal. Then earlier this month, he just went out of contact with us, Judge. In our experience, it happens from time to time. |
| **JUDGE:** | What? |
| **MR. THOMASSEN:** | Sorry? |
| **JUDGE:** | What did he do? |

**MR. THOMASSEN:** He just went out of contact with us, we haven't been able to reach him since the beginning of this month, which is when the time when we reached the actual written terms of the settlement. And so what we decided, we wrote him a letter. We told him that he needed to get in touch with us if he wished to continue on as a class representative in this matter. We didn't get any response. We did some investigations of our own, trying to locate him, contacting friends, family, that sort of thing. No one had heard from him, so he's just dropped off our radar, Judge. And --

**JUDGE:** Wait, how long has it been?

**MR. THOMASSEN:** It's, how long has it been since we haven't been in touch with him?

**JUDGE:** Yes.

**MR. THOMASSEN:** Since this month, Your Honor. Prior to that --

**JUDGE:** But only a month? So he didn't agree to this then, this notice of written consent to file second in the complaint? Did he stipulate to the--did he authorize you to sign this on his behalf?

**MR. THOMASSEN:** Well, Your Honor, what we did is, I don't have the date right in my mind, but we sent Mr. Perrine a letter by certified mail.

**JUDGE:** He authorized you to sign this on his behalf?

**MR. THOMASSEN:** No, what I'm saying, Judge, is that --

**JUDGE:** Just answer my question.

**MR. THOMASSEN:** No, he didn't --

**JUDGE:** Did he tell you, Mr., what is your last name?

**MR. THOMASSEN:** Thomassen, Your Honor

**JUDGE:** Mr. Thomassen, did you say you can file this document on my behalf?

**MR. THOMASSEN:** No, Your Honor, he did not, but if I can explain. We send Mr. Perrine a letter explaining the situation, explaining that --

**JUDGE:** How do you know he got it?

**MR. THOMASSEN:** Excuse me?

**JUDGE:** How do you know he got the letter?

2

| | |
|---|---|
| **MR. THOMASSEN:** | Well, we've had points of contact with him, Judge. We've had, he's always been responsive to email address. He's always been responsive to the cell phone that he recently gave us and we've reached out to him time and time again. We -- |
| **JUDGE:** | Counsel, you need to listen to my questions. The question was how do you know he got the letter, not whether you've had points of contact over the last two years. How do you know he got the letter? |
| **MR. THOMASSEN:** | Well, to answer your question, Judge, we can't know for certain. |
| **JUDGE:** | You don't know. |
| **MR. THOMASSEN:** | That's -- |
| **JUDGE:** | You don't know and he did not authorize you to file this document removing him as one of the lead plaintiffs, correct? |
| **MR. THOMASSEN:** | Correct, correct, Your Honor. |
| **JUDGE:** | All right. So where does that leave me? You can't just drop people without their consent and without some record showing that they know they've been removed as a lead plaintiff. So what are you going to do about it? |
| **MR. THOMASSEN:** | Well, Your Honor, we can continue to try and get in touch with him. We can file something with the court showing our efforts to get in touch with him. We can file with the court the retention agreement he signed with our firm, which stated that he had to keep in touch with us and provide us with up-to-date contact information and we can file the letter that, show Your Honor the letter that we sent to him explaining that he had to get in touch with us if he wished to continue forward as a representative -- |
| **JUDGE:** | All right. You need to work it out because I'm not going approve a settlement where the named lead plaintiff suddenly is kicked off the case by the plaintiff's lawyer. This is not going to happen. So here's the date I'm going to set. You guys, you all have until August 1st, let me step back, yes, you have until August, when is August 1st, Lisa, is that a -- |
| **CLERK:** | It's a Friday, Your Honor |
| **JUDGE:** | Okay. What's the Wednesday before that? |
| **CLERK:** | July 30th. |

3

|  |  |
|---|---|
| **JUDGE:** | All right.  You have until July 30th to file your motion for a preliminary approval and I'll set a hearing for that.  So after I see the motion, that will be within, you know, a couple of weeks of that.  I want you to make sure you have the situation squared away with Mr. Perrine. |
| **MR. THOMASSEN:** | Yes, Your Honor. |
| **JUDGE:** | And also make sure that you give full attention to our procedural guidance for class action settlements.  It's posted on our website. |
| **MR. THOMASSEN:** | We're very aware of them, Judge. |
| **JUDGE:** | Now, tell me roughly what are the terms that you all have preliminarily agreed to with some of them? |
| **MR. THOMASSEN:** | Sure, Judge.  While there will be a creation of a settlement fund from which class members can make claims, the amount that they'll be getting back, starts at $30, that's the baseline, and it may go up or down depending on how many claims are filed.  The product at issue here, the price of it is $60, so people will be getting half back under the terms of the settlements and that's basically it, Judge.  We'll, of course, be filing a fee petition with regards to the settlements and we'd be seeking an incentive award on behalf of the class representative or representatives if we're able to get in touch with Mr. Perrine.  If you'd like more detail than that -- |
| **JUDGE:** | What do you expect the total class recovery to be, do you know how many people are going to be, well, first of all, let me ask you this, is there a claim procedure or how people are going to establish the $30 entitlement? |
| **MR. THOMASSEN:** | Sure, Judge.  There's a claim form that's involved with the settlement.  It doesn't require class members to submit anything physical to get any relief back, they just to have to answer three questions, when the bought the game, where they bought the game and how much they paid for it, because the amount that they might get back is dependent on how much they ultimately paid for it.  They have to sign it under penalty of perjury and that's really it, Judge.  If -- |
| **JUDGE:** | The national class? |
| **MR. THOMASSEN:** | Yes, Your Honor. |
| **JUDGE:** | How many do you estimate are in it? |
| **MR. THOMASSEN:** | I believe, according to the records that we have provided, it's around |

4

|  |  |
|---|---|
|  | 150,000. |
| **JUDGE:** | All right. So the potential total value is going to be $500,000 or $5,0000,000? I don't do math. Tell me, what's the potential, what is it 30, 150,000 times 30 is what? You don't do math either. |
| **MR. THOMASSEN:** | I don't do math. |
| **MALE 1:** | Your Honor, it's what 3 -- |
| **MR. SCHWARTZ:** | That's $4.5 million. |
| **JUDGE:** | $4.5 Million, all right. And then how are you going to ask for attorney's fees, is it percentage or you're going to submit a list or what? |
| **MR. THOMASSEN:** | Percentage, Judge. We'll be seeking up to a quarter of the total fund and Sega, in the settlement papers, has agreed not to oppose an amount up to that much. Of course, we'll submit papers. |
| **JUDGE:** | Order of the 4.5 million total or -- |
| **MR. THOMASSEN:** | No, no, I'm sorry, Judge. |
| **JUDGE:** | -- on top of the 4.5 million? |
| **MR. THOMASSEN:** | No, no, no, a quarter of the $2,000,000 settlement fund that's established by the settlement. So it would be 500,000 -- |
| **JUDGE:** | Wait, there's a capped out--it's capped out at 2,000,000? |
| **MR. THOMASSEN:** | That's where it is capped out, Judge. |
| **JUDGE:** | I didn't hear you mention that. |
| **MR. THOMASSEN:** | I'm pretty sure I did, if I didn't, I apologize. |
| **JUDGE:** | 150,000, okay. Why is it capped out at 2,000,000? |
| **MR. THOMASSEN:** | Well, Judge, based on the expected claims right here, we expect most people to get that $30. We actually expect the total amount that claimants will receive to go up to the full purchase price of the game and the settlement agreement itself, actually. So for the $2,000,000 settlement fund, there's a $1.25 million floor for the fund, that Sega will be paying and that money will go to the class no matter what, whether that's in the form of redeemed claims or if not enough redeemed claims are filed to reach that $1.25 million cap, the settlement provides for a cy pres remedy, too. And so that's money that will be going back to the class no matter what, then Sega's agreed |

5

|  |  |
|---|---|
|  | to pay up to $2,000,000 in claims, if there are, enough claims filed that that $1.25 million floor will be exceeded. So in our experience, Judge, we think that people will be getting at least the $30 back, if not more, and then if everyone in the class files, of course, the amount would just go pro rata after that. |
| **JUDGE:** | All right. I will wait to see your papers. I mean, I--discounting a $4.5 million recovery to $2,000,000 seems like a bold and difficult to understand move and so more than a 50% discount on a class recovery, so I'm going to want some explanation about why the recovery is being given such a substantial discount. |
| **MR. THOMASSEN:** | Sure, we're happy to explain that on our papers, Judge. |
| **JUDGE:** | I do not want to see, you know, red flags. I do not want to see incentive payments to lead counsel. I do not believe in them, Rule 23 does not permit them. And if you're going to ask, be prepared for the fact that it needs to be a very modest amount. The second thing is I won't want to see any money going back to the defendants, all right, and I--you know, they don't keep anything out of the settlement. Cy pres is a difficult concept these days. So I want you think about how you're going to make that work. But I am interested to hearing your explanation about how the $4.5 million is being cut down to 2 in this case. You got until August 1st. Anything else I can help you with today? |
| **MR. SCHWARTZ:** | Yes, Your Honor, Robert Schwartz -- |
| **JUDGE:** | Yep. |
| **MR. SCHWARTZ:** | -- for defendant Gearbox. I just want to clarify something. We are not a party to the settlement agreement. We, in our -- |
| **JUDGE:** | Oh, is that right? |
| **MR. SCHWARTZ:** | I just want to explain. |
| **JUDGE:** | This is not a global settlement? |
| **MR. SCHWARTZ:** | Well, the settlement does contain, is a global settlement of claims against the defendants and a release of the two defendants, but we are merely the developer of the game. Sega is the publisher and, if you will, the distributor of the game. |
| **JUDGE:** | All right. |
| **MR. SCHWARTZ:** | We didn't do the advertising campaign, we didn't do the marketing campaign. As the publisher, we have deferred to Sega in a lead role |

6

|||
|---:|:---|
| | and we're grateful that it has worked out the arrangements for the settlement of this dispute, but until two days ago, we didn't see the proposed settlement agreement and I just wouldn't want my silence to indicate a concurrence for approval of the document on behalf of Gearbox. We're not even a party to it and we just want to note that we're reserving our rights. |
| **JUDGE:** | Okay. But if we go forward with this preliminary approval hearing, this is going to wrap up the whole case, right? |
| **MR. SCHWARTZ:** | That's our understanding, yes, Your Honor |
| **JUDGE:** | If I approve it, okay. |
| **MR. SCHWARTZ:** | Yes. |
| **JUDGE:** | And Gearbox isn't putting a penny into the settlement? |
| **MR. SCHWARTZ:** | They're not, Your Honor |
| **JUDGE:** | Okay. Is that pursuant to contract with Sega? |
| **MR. SCHWARTZ:** | Your Honor, Robert Schwartz, again, as between Gearbox and Sega, we just reserved our rights. So whatever that may be, would be subject of some later discussion. |
| **JUDGE:** | I see, okay. |
| **MS. KRAMER:** | Sharon Kramer, Your Honor. May I make a brief statement? |
| **JUDGE:** | Yes. |
| **MS. KRAMER:** | Lest it be thought that I agreed with everything that Mr. Schwartz just said, we don't agree that they didn't participate in the marketing. We do agree that they're not a party to the settlement and I just want that on the record that we don't agree with his representations. What I wanted to ask, Your Honor, is if you would please keep an open mind about a reversionary interest because I know that reversionary interests are permitted under California law. They are approved in district courts in California and under the Ninth Circuit and I would ask that you, at least, keep an open mind about that until you see our papers. We think this is a very weak case. |
| **JUDGE:** | I am very skeptical about any settlement that allows money to go back to a defendant. So I'm not interested in what other folks have done. You're in my courtroom and the law is behind me on this. I am deeply skeptical about the fairness and adequacy of this class action settlement that gives money back to the defendant. So you all do |

7

|  |  |
|---|---|
|  | whatever you want to do. I'll look at the papers, when I see them in August, but that is a big red flag for me. And just know it now, because it's not going to go away. |
| **MS. KRAMER:** | Okay. I -- |
| **JUDGE:** | And don't--do me a favor, don't cite 800 cases about how other courts have done it. I know what other courts have done and I'm telling you what my position is. So if you want to argue forward, that's fine, but make it short and sweet because I'm telling you now, it is a major factor that I consider to be a problem in class action settlements. I just kicked one--I'm in the process of kicking one right now for that very reason. |
| **MS. KRAMER:** | Okay. Can -- |
| **JUDGE:** | So that's where you are on reversionary interests. |
| **MS. KRAMER:** | Sharon Kramer -- |
| **JUDGE:** | Now, you two are going to sue each other, is that the next step or you're still working that out? |
| **MR. SCHWARTZ:** | Robert Schwartz, Your Honor, we have no idea. |
| **JUDGE:** | Okay, all right. So how does Gearbox get out if you're not contributing anything? You don't have to answer, I'm not going to hold you to it, but, I mean, how are you getting out of this case unless you're--what's the consideration for Gearbox to settle with the plaintiffs? |
| **MR. SCHWARTZ:** | Do I, can I withhold my answer until we next see you? |
| **JUDGE:** | You want to do it later, that's fine, okay, yeah. |
| **MR. SCHWARTZ:** | All right, thank you. |
| **JUDGE:** | Yeah, all right. Okay. Anything else I can do for you? All right thank you. |
| **MR. SCHWARTZ:** | No, Your Honor. |

8