Mark S. Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin S. Thomassen (Admitted *Pro Hac Vice*)
bthomassen@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DAMION PERRINE and JOHN LOCKE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>SEGA OF AMERICA, INC., a California corporation, and GEARBOX SOFTWARE, L.L.C., a Texas limited liability company,<br><br>*Defendants*. | Case No. 3:13-cv-01962-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS CLAIMS AND WITHDRAW CLASS REPRESENTATIVE**<br><br>Hearing Date: October 29, 2014<br>Time: 2:00 p.m.<br>Courtroom: 11<br>Judge: Honorable James Donato<br>Action Filed: April 29, 2013 |

**PREFATORY STATEMENT**

Defendant Gearbox Software, L.L.C. ("Gearbox") previously consented to Plaintiff Damion Perrine's ("Perrine") effective withdrawal from this case in June 2014—when it understood that Sega of America, Inc. ("Sega") was buying it a class wide release. Up through that time, Gearbox—and its counsel—had been relatively cooperative and courteous throughout this case. The *moment*, however, Gearbox found it would not be part of Sega's settlement, it changed its tune entirely, accused Plaintiffs of bringing this case in bad faith, and filed its Opposition to the latest Motion, (Dkt. 79 (the "Opposition" or "Opp.")), where it primarily brings unsupported and wild accusations against Plaintiffs' counsel. Gearbox is just being retaliatory and its hysteria should be ignored.

## I.   INTRODUCTION

Gearbox's Opposition seeks to force Perrine to litigate this case against his will while he is incarcerated in Pennsylvania. In opposing Perrine's motion for voluntary dismissal and withdrawal as a class representative, (Dkt. 69) (the "Motion"), Gearbox does a complete about-face from its June 2014 position, where it effectively *consented* to that same dismissal and withdrawal. (Dkt. 61.) Now, the Opposition resorts to speculative mud-slinging—accusing Plaintiffs' counsel of acting without Perrine's authority (by trying to "jettison" him from his own case) and of intentionally misleading the Court (by not disclosing Perrine's incarceration at the Parties' June 26, 2014 Case Management Conference (the "June CMC")). (Opp. at 1–2.) Neither accusation has any basis in truth and Gearbox offers no facts to support either of them.

That said, Gearbox tries to come up with one legal argument to support its contention that Perrine should not be permitted to leave this case: doing so will cause "plain legal prejudice" because Gearbox filed two non-dispositive motions on July 30, 2014. (Opp. at 2.) Gearbox is wrong. To start, the record establishes that Gearbox learned that Perrine expressly authorized and sought his withdrawal as early as July 11, 2014—nineteen days before it filed its non-dispositive motions and told Plaintiffs' counsel (for the first time) that Gearbox would not consent to letting Perrine exit the case. Thus, Gearbox's claim that the Motion is only a bid to avoid an adverse ruling is belied by the actual sequence of events—and thus cuts sharply against Gearbox's claims

of prejudice. Second, even if completely successful, *neither* of Gearbox's recently-filed non-dispositive motions—i.e., its motion for *partial* summary judgment (Dkt. 66) and its motion to *strike class allegations* (Dkt. 67)—will significantly affect Perrine's case against Gearbox. That is, even if Gearbox wholly prevails on its pending motions, it will still have to defend against Perrine's common law claims concerning his purchase of the Aliens: Colonial Marines video game that Gearbox developed and marketed—demonstrating that Gearbox's claims of prejudice fall flat.

In the end, Gearbox cannot force Perrine to litigate this case—especially under these circumstances, where Perrine is incarcerated and cannot effectively advocate for a putative class of some 135,000 individuals. The Motion should be granted.

## II.  CORRECTIONS TO GEARBOX'S ACCUSATIONS OF IMPROPRIETY AND MISSTATEMENTS OF THE RECORD

Although it doesn't explain the point of its *ad hominem* attacks, Gearbox makes several. The Opposition accuses Plaintiffs' counsel of, first, moving to dismiss Perrine's claim without his authority and, second, misleading—or outright lying to—the Court at the June CMC. For the sake of correcting the record, Plaintiffs address both accusations here.

### A.  The Motion Was Filed with Perrine's Authority.

First, Gearbox argues that the Motion was filed without Perrine's authority and is actually a request made by and on behalf of *Plaintiffs' counsel*. (*See* Opp. at 2.) This accusation is baseless and made without a shred of factual or legal support.

Nevertheless, through its Opposition, Gearbox presses that "[t]he record is unclear *as to whether* . . . Perrine himself . . . [wishes] to dismiss his claims," and that "[n]othing submitted with [the] motion indicates that *Perrine* himself asked to dismiss his claims." (Opp. at 2–3.) Insinuating impropriety, Gearbox characterizes the Motion as *Plaintiffs' counsel's* "effort to jettison Perrine from his case" and *Plaintiffs' counsel's* "request to dismiss their client," (*id.* at 2, 3), rather than as *Perrine's* request to exit the case, as the Motion is plainly styled. (*See*, *e.g.*, Dkt. 69 at 4 ("Despite diligently pursuing the litigation for over a year, Plaintiff Perrine has decided that he is no longer able to continue as a named plaintiff in this case due to personal and legal issues[.]").) To "support" its accusations, Gearbox states only that Perrine himself hasn't filed anything (or

provided anything directly to Gearbox) that confirms his attorneys are acting with his authority—as if that's the normal course in situations like this (i.e., as opposed to a client filing motions through his counsel of record). (Opp. at 2.)

What Gearbox does not address is that—as the Court is aware—Plaintiffs' counsel filed a *sworn declaration* with the Motion, explaining that the Motion was indeed filed with Perrine's authority.[2] (Dkt. 69-1 ¶ 12.) Gearbox also neglects to mention that on July 11, 2014, Plaintiffs' counsel informed Gearbox's counsel that they had, in fact, located Perrine and obtained "his authorization to move forward with the Second Amended Complaint" that Gearbox previously consented to—and which would have removed Perrine from the case. (*Id.* ¶ 13; Dkt. 61.) And Gearbox ignores that it never once raised any concerns or misgivings about Perrine's desire to withdraw—to the Court or to Plaintiffs' counsel—before July 30, 2014. (Dkt. 69-1 ¶¶ 14-15.) Gearbox offers no evidence to contradict, much less even question, the *sworn testimony* offered by Plaintiffs' counsel and thus, made no serious inquiry before filing its wild accusations.

What's more, Gearbox lacks any legal basis to legitimately challenge whether Plaintiffs' counsel had authority to act on Perrine's behalf. To that end, its accusations completely ignore the long-standing presumption that attorneys appearing and acting for a party in a particular cause have authority to do so. *See Hill v. Mendenhall*, 88 U.S. 453, 454 (1874) ("When an attorney of a court of record appears in an action for one of the parties, his authority, in the absence of any proof to the contrary, will be presumed. A record which shows such an appearance will bind the party until it is proven that the attorney acted without authority."); *Dep't of Water & Power of City of Los Angeles v. Anderson*, 95 F.2d 577, 580 (9th Cir. 1938) ("We will assume that members of the bar formally appearing for litigants before us and in other federal courts are authorized to so appear . . . and will continue to indulge in that assumption until the litigants or such attorneys formally and under oath challenge the truth of such assumption, or proof is submitted challenging the truth of such assumption, sufficient to warrant inquiry regarding such authority.") (citing

---

[2] Here, the fact that Plaintiffs' counsel provided summary explanations of their meeting with Perrine was done entirely for the Court's benefit (i.e., based on the concerns raised during the June 26th Case Management Conference)—not Gearbox's.

*Mendenhall*, 88 U.S. 453); *Clark Equip. Co. v. Wheat*, 92 Cal. App. 3d 503, 523 (1979) ("The rule, founded in reason and sanctioned by the authorities, is that it is presumed that an attorney appearing and acting for a party to a cause has authority to do so and to do all other acts necessary or incidental to the proper conduct of the case, and the burden of proof rests on the party denying such authority, to sustain his denial by a clear preponderance of the evidence."). Because Gearbox makes its accusations without offering any proof of its own (and cannot, because there is none), its legal position is specious, at best.

Without any legal or factual basis, Gearbox's accusations that Plaintiffs' counsel have acted without their client's authority are baseless and should be ignored.

B. **Plaintiffs' Counsel Did Not Know of Perrine's Whereabouts from Early June through July 3, 2014, and Explained As Much at the June CMC.**

Next, Gearbox—through carefully chosen but woefully transparent wording—accuses Plaintiffs' counsel of lying to, or improperly concealing facts from, the Court at the June CMC. This attack is also baseless, and the only evidence Gearbox offers in support is objectively untrue.

In particular, Gearbox says that:

(i) "[T]he July 30 declaration that plaintiffs' counsel filed in support of their effort to jettison Perrine from his case[] **reveals facts that his lawyers knew at the CMC but chose not to share with the Court or Gearbox**." (Opp. at 2 (emphasis added).);

(ii) The declaration "describes a flurry of activity in June, designed to locate a **'missing'** client who had **'dropped off'** his lawyers' radar[.]" (*Id.* (emphasis added, but quotations in original).);

(iii) The declaration "offered [a] new fact: 'On June 16, 2014, during the course of [Plaintiffs' counsel] investigation into Mr. Perrine's whereabouts, [Plaintiffs' counsel] learned that Mr. Perrine had been arrested on June 4, 2014 in Westmoreland County, Pennsylvania.'" (*Id.* (citing Dkt. 69-1, ¶ 4.));

(iv) Gearbox "easily found" public records after the June 26th Case Management Conference that "show **that Perrine had been incarcerated in [Westmoreland County Prison] since June 7**." (*Id.* at 2–3.); and that

(v) Therefore, "Perrine's lawyers knew ahead of the CMC that Perrine had been arrested in early June, but did not disclose this to the Court (or to Gearbox, before seeking Gearbox's consent to the dismissal)." (*Id.* at 3.)

By interjecting the "fact" that "easily found" public records showed "Perrine had been incarcerated in [Westmoreland County Prison] since June 7," Gearbox suggests that Plaintiffs' counsel knew or

should have known that Perrine was incarcerated as of June 26th but lied to the Court in only stating that Perrine was "missing" and had "dropped off" their radar.

But again, Gearbox does not address that Plaintiffs' counsel filed a *sworn declaration* with the Motion, explaining that, beginning in early June 2014 and continuing until July 3, 2014, Plaintiffs' counsel had no idea as to Perrine's whereabouts. (Dkt. 69-1 ¶ 12.) Specifically, on June 16, 2014, Plaintiffs' counsel learned that Perrine had been arrested in Westmoreland County, Pennsylvania—but were told, by officials at the Westmoreland County Sherriff's Office, that Perrine *had been released*. (*Id.* ¶¶ 4–5.) Prison officials likewise had no information as to Perrine's whereabouts and Plaintiffs' counsel's subsequent attempts to locate Perrine prior to the Parties' June CMC were unsuccessful. (*Id.* ¶¶ 5–7.) What's more, Plaintiffs' counsel even *told* Gearbox's counsel—prior to the June CMC—that they could not locate Perrine. (Declaration of Benjamin S. Thomassen ("Thomassen Decl.") at ¶ 3, attached hereto as Exhibit A.).) Thus, Plaintiffs' counsel truthfully reported to the Court that, pursuant to their own investigation, their client was indeed "missing." (Dkt. 69-1 ¶¶ 4–8.) And once it was discovered that Perrine was being held at the Allegheny County Jail, Plaintiffs' counsel took a flight to Pennsylvania, met with him in person, and promptly took steps to assist him in exiting the case. (*Id.* ¶¶ 9–15.)

Gearbox contests none of this testimony. Instead, it offers a single piece of "evidence" to support its *gotcha* argument—i.e., the "easily found [public records]" that Gearbox apparently located following the June CMC.[3] But those records don't show what Gearbox claims. Rather, the document upon which Gearbox relies only shows that Perrine has three charges brought against him in Westmoreland County. That "evidence" does not indicate—as Gearbox represents to the Court—that Perrine (i) is or even was incarcerated, (ii) how long he has been incarcerated, or (iii) where he is or was incarcerated as of June 26th.[4] (*Id.*)

---

[3] A true and accurate copy of the document linked to by Gearbox (and accessible on the Unified Judicial System of Pennsylvania's web portal) is attached to the Thomassen Decl. as Exhibit 1.

[4] Gearbox also doesn't explain how the "easily found" records show that Perrine is or was incarcerated in Westmoreland County, Pennsylvania, but Plaintiffs' counsel met with him in person in Alleghany County, Pennsylvania. (*Cf.* Opp. at 2, 3; Dkt. 69-1 ¶ 11.)

As before, Gearbox offers no evidence to back up its false accusations, and Plaintiffs' counsel is aware of no inquires Gearbox's counsel has made to find any. Its attacks and mischaracterizations of the record should be ignored.

### III. ARGUMENT

Gearbox's sole argument in opposition to the Motion—i.e., that it will suffer legal prejudice if Perrine is allowed to dismiss his claims prior to a decision on Gearbox's recently filed, non-dispositive motions—falters for several reasons.

#### A. The Uncontested Record Proves that Perrine Does Not Seek Dismissal to "Avoid" an Adverse Ruling.

Perrine seeks dismissal from this case and withdrawal as class representative for one straightforward reason: he is incarcerated. (Dkt. 69-1 ¶ 12.) As such, he cannot readily communicate with his lawyers, engage in the litigation process, or otherwise effectively represent the putative class. (*Id.*) Due to that personal hardship, he asks that Locke and the putative class proceed against Gearbox and Sega (through litigation and settlement, respectively) without him.

Gearbox, however, suggests Perrine is trying to avoid an adverse ruling. Thus, it claims that Perrine decided to seek dismissal *after* Gearbox's counsel "notified plaintiffs' counsel on July 22, 2014—eight days before plaintiffs filed [the Motion]—that Gearbox would be filing a motion for summary judgment and a motion to strike the class allegations." (*See* Opp. at 2.) But that's not true, and Gearbox doesn't mention (for obvious reasons) that (i) Perrine personally authorized the dismissal of his claims on *July 11th*—more than a week before Gearbox first notified Plaintiffs' counsel of its intent to file its now-pending motions, and almost three weeks before the motions were filed, (Dkt. 69-1 ¶ 12)—and (ii) that Plaintiffs' counsel *communicated that authorization to Gearbox on the same day*, (*id.* ¶ 13). Thus, the uncontested record shows that it is *Gearbox* that decided to file its motions after learning that Perrine had authorized his attorneys to remove him from the case (and after it learned Sega, through its partial settlement with Locke, would not be paying for Gearbox's class-wide release). And Perrine did not file the Motion to "avoid" Gearbox's non-dispositive motions—rather, he only did so after Gearbox expressed, on July 30, 2014, that it would no longer consent to the filing of the Second Amended Complaint (even though

it had previously so consented). Since Gearbox decided to no longer let Perrine out of the case willingly—and didn't communicate its refusal to do so until July 30th—Perrine had no other option but to seek leave for a voluntarily dismissal, and thus filed the Motion out of necessity.

These plain facts more than distinguish the few cases Gearbox cites, where courts addressed plaintiffs that sought voluntary dismissal *for the purpose of* avoiding an adverse ruling and, as such, found that plain legal prejudice would result. *See White v. Donley,* CV05-7728ABCFMOX, 2008 WL 4184651, at *1, 3 (C.D. Cal. Sept. 4, 2008) (observing that the *pro se* plaintiff failed to properly oppose a motion for summary judgment prior to seeking voluntary dismissal before concluding that "avoidance of an adverse [summary judgment] ruling is an abusive reason to seek dismissal"); *In re Sizzler Restaurants Int'l, Inc.*, 262 B.R. 811, 823 (Bankr. C.D. Cal. 2001) (citations omitted) (citing *Pace v. Southern Express Co.,* 409 F.2d 331, 334 (7th Cir. 1969) (affirming the denial of plaintiff's motion to dismiss without prejudice on the basis that, inter alia, plaintiff "was attempting to deprive the defendant of a ruling on the summary judgment motion by its dismissal tactic")). Further, even assuming *arguendo* that Perrine seeks to avoid an adverse ruling (he does not), the filing of Gearbox's motions, without more, would still not amount to clear legal prejudice because there's nothing to suggest that the Court would rule in Gearbox's favor. *See Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*, 299 F. App'x 664, 666 (9th Cir. 2008) ("A district court may consider whether the plaintiff is requesting a voluntary dismissal only to avoid a *near-certain* adverse ruling) (emphasis added); *Edstrom*, 2012 WL 4092420, at *2 (same); *Hanson v. Wells Fargo Bank N.A.*, C10-1948Z, 2011 WL 2144836, at *2 (W.D. Wash. May 26, 2011) (noting that plaintiff's claims "face certain dismissal with prejudice" in deciding whether to grant voluntary dismissal); *Radiant Tech. Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 203–204 (N.D. Tex. 1988) ("[O]utright dismissal should be refused . . . when a plaintiff seeks to circumvent an *expected* adverse result." (emphasis added)); *compare Terrovona v. Kincheloe*, 852 F.2d 424, 428 (9th Cir. 1988) (finding district court did not abuse its discretion in denying petitioner's request for dismissal without prejudice where magistrate judge had already issued report and recommendations on defendant's motion for summary judgment). Here, Gearbox cannot (and does not even try to) demonstrate that an adverse result is "expected," especially since

discovery into the issues involved in its motion for partial summary judgment has only recently commenced. (*See* Dkt. 73 at 2–3.)

In the end, Gearbox cannot credibly argue that Perrine's dismissal request stems from a desire to avoid an adverse ruling on motions that were not even contemplated when Perrine authorized his lawyers to withdraw him from this case. Gearbox's attempt to recast Plaintiffs' motivations in seeking dismissal should therefore be rejected—and cut sharply against any purported showing of legal prejudice.

### B. The Mere Filing of Gearbox's Motions Does Not Warrant Denying Perrine's Dismissal, Especially Because They are Not Dispositive of this Case.

Regardless of Perrine's motivations, Gearbox suggests that it will be prejudiced if Perrine's dismissal is granted simply because it has motions pending. Gearbox ignores, though, that courts frequently grant voluntary dismissals even where *dispositive* summary judgment motions are pending. And here, even if Gearbox's *non-dispositive* motions were completely resolved in its favor, they would still not resolve Perrine's claim—cutting against its claim of prejudice.

To start, a pending summary judgment motion is not the panacea Gearbox hopes for—rather, it is "simply a fact to be examined by the trial judge" in determining whether to grant dismissal, and in no way mandates that dismissal under Rule 41(a)(2) is inappropriate. *Creative Labs, Inc. v. Orchid Tech.*, C 93-4329 TEH, 1997 WL 588923, at *2 (N.D. Cal. Sept. 12, 1997). Not surprisingly, then, courts routinely grant motions for voluntary dismissal even where a summary judgment motion is pending. *See, e.g., Edstrom v. NDEX W., LLC*, CIV S-10-0105 KJM, 2012 WL 4092420, at *2 (E.D. Cal. Sept. 17, 2012) ("the fact that a voluntary dismissal will moot defendant's motion for summary judgment in itself is not legal prejudice"); *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 38 (D.D.C. 2004) (granting dismissal and noting that "it will always be the case that a voluntary dismissal avoids an adverse ruling just as much as it avoids a favorable one").

What's more, Gearbox's request that the Court resolve its motions before dismissing Perrine from this case—or alternatively dismiss his claims now, *with prejudice*—cannot be justified. That's because Gearbox's motions to strike *class allegations* and for *partial* summary

PLAINTIFFS' REPLY IN SUPPORT OF                  8                  CASE NO. 3:13-cv-01962-JD
MOTION TO DISMISS CLAIMS AND WITHDRAW CLASS REPRESENTATIVE

judgment would not—even if completely successful—dispose of this matter or bar Perrine from re-filing his case. *See Helio, LLC v. Palm, Inc.*, C 06-7754 SBA, 2007 WL 1063507, at *2 (N.D. Cal. Apr. 9, 2007) ("[V]oluntary dismissal may not be appropriate where the sole reason for the plaintiff's request for dismissal is apprehension regarding a possible adverse ruling on a pending *post-trial or dispositive motion.*") (emphasis added); *Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, 3:08-CV-1724-D, 2010 WL 3565232, at *2, 4 (N.D. Tex. Sept. 8, 2010) (granting dismissal where it did not appear that it would enable plaintiff to avoid an "adverse, *case-dispositive*" decision) (emphasis added); *see also Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982) ("[I]t is clear that the mere inconvenience of defending another lawsuit does not constitute plain legal prejudice.").

Here, Gearbox's motion to strike class allegations is a procedural (i.e., not dispositive) one, and therefore cannot cause the legal prejudice that Gearbox believes it will incur. *King v. O'Reilly Auto. Stores, Inc.*, C13-1220JLR, 2013 WL 5675007, at *2  (W.D. Wash. Oct. 17, 2013) (plain legal prejudice "does not necessarily result from granting a voluntary dismissal that will allow a plaintiff to avoid a non-dispositive adverse ruling") (citing *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990) (drawing a distinction between procedural rulings and rulings on the merits in voluntary dismissal motions); *Golden Valley Dairy, L.L.C. v. Nw. Dairy Ass'n*, 10-CV-00069-EJL, 2010 WL 2620003, at *2 (D. Idaho June 24, 2010) (explaining that loss of procedural protections does not constitute legal prejudice).[5]

Second, Gearbox's motion for partial summary judgment is not dispositive either, as Gearbox will have to defend against Perrine's claim no matter the outcome of its motion. *See Hernandez ex rel. Telles-Hernandez v. Sutter Med. Ctr. of Santa Rosa*, C 06-03350 SBA, 2008 WL 2156987, at *10 n.28 (N.D. Cal. May 20, 2008) (partial summary judgments are not dispositive

---

[5] Gearbox also suggests that the Motion "is a tactical move by which counsel hope to mask [certain] fundamental problems before they seek class certification against Gearbox," because, according to Gearbox, Perrine's individual allegations "highlight the individualized nature of the claims." (Opp. at 3.) But even if this were true, Gearbox remains free to make whatever arguments it wants in opposing a future motion for class certification—including that individualized issues predominate—regardless of whether Perrine is dismissed from this case. Gearbox cites no authority to show that it would be precluded from making such arguments if Perrine is no longer a named plaintiff—because there isn't any.

PLAINTIFFS' REPLY IN SUPPORT OF                                 9                        CASE NO. 3:13-cv-01962-JD
MOTION TO DISMISS CLAIMS AND WITHDRAW CLASS REPRESENTATIVE

judgments, but interlocutory orders subject to modification at any time prior to final judgment); *Williamson v. UNUM Life Ins. Co. of Am.*, 160 F.3d 1247, 1250 (9th Cir. 1998) ("Orders granting partial summary judgment are, absent special circumstances, not appealable final orders . . . because partial summary judgment orders do not dispose of all claims and do not end the litigation on the merits."); *see also Citizens Against Longwall Mining v. Colt LLC, IEC (Montgomery) LLC*, 05-3279, 2008 WL 1335609 (C.D. Ill. Apr. 8, 2008) (granting voluntary dismissal without prejudice pending a motion for partial summary judgment).[6]

Thus, delaying Perrine's dismissal until after resolution of Gearbox's motions will have no effect on Perrine's ability to sue Gearbox for its marketing of Aliens: Colonial Marines. And because the possibility of having to defend a subsequent lawsuit does not establish legal prejudice, *Hamilton,* 679 F.2d at 145, Gearbox's claim that it will be prejudiced if its motions aren't decided as to Perrine simply misses the mark.

## IV. CONCLUSION

Gearbox's motion is steeped in unfounded and legally unsupportable vitriol that, in large part, has *no* relevance to the Motion before the Court. Thus, for the reasons stated in the Motion, Plaintiffs respectively request that the Court enter an Order granting the Motion and permitting the case to move forward as between Locke, the putative class he seeks to represent, and Gearbox.

---

[6] Gearbox relies on *In re Sizzler Restaurants* to suggest that the Court should deny Perrine's dismissal because it may foreclose Gearbox from bringing a subsequent action for malicious prosecution. (*See* Opp. at 3.) But that reliance is misplaced. In *Sizzler*, the party opposing dismissal argued that the counterclaims brought against it were alleged "with malice," and "without reasonable grounds in maintaining the claims"—which Gearbox has not (and cannot) claim here, especially since Defendants' motion to dismiss was denied in its entirety. *In re Sizzler Restaurants Intern., Inc.*, 262 B.R. 811, 821 (2001); (Dkt. 40). More importantly, the *Sizzler* court reasoned that dismissal was not warranted because a "determination on the merits" is necessary to maintain a malicious prosecution claim under California law. *Id.* But as described above, the same considerations do not apply here because even if Gearbox's summary judgment motion is decided against Perrine, there would be no final determination on the merits that could support a claim for malicious prosecution. *See Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1103 (C.D. Cal. 2009) ("[A] malicious prosecution action accrues at the time of the final judgment in the underlying litigation in issue.").

| | |
|---|---|
| Dated:  August 20, 2014 | **DAMION PERRINE and JOHN LOCKE**, individually and on behalf of a class of similarly situated individuals, |

By: /s/  Benjamin S. Thomassen
      One of Plaintiffs' Attorneys

Mark S. Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
Benjamin S. Thomassen (Admitted *Pro Hac Vice*)
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiffs and the Putative Class*

---

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION TO DISMISS CLAIMS AND WITHDRAW CLASS REPRESENTATIVE
    11    CASE NO. 3:13-cv-01962-JD

## CERTIFICATE OF SERVICE

I, Benjamin S. Thomassen, an attorney, hereby certify that on August 20, 2014, I served the above and foregoing *Plaintiffs' Reply in Support of Motion to Dismiss Claims and Withdraw Class Representative* by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Benjamin S. Thomassen