UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMION PERRINE,<br><br>    Plaintiff,<br><br>    v.<br><br>SEGA OF AMERICA, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-01962-JD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND DEFENDANT'S MOTION FOR DISMISSAL OR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 95, 130 |

In this consumer class action, plaintiff John Locke has moved for class certification and defendant Gearbox has moved for dismissal or judgment on the pleadings. Dkt. Nos. 95, 130.[1] The Court denies both motions.

**BACKGROUND**

The product at issue in this case is the video game "Aliens: Colonial Marines" ("ACM"). Dkt. No. 26 ¶ 1. The game, developed by Gearbox Software, L.L.C. ("Gearbox") and produced by Sega of America, Inc. ("Sega"), was "held out as the canon sequel to James Cameron's 1986 film 'Aliens.'" *Id.* ¶ 19. Named plaintiff John Locke is an "avid fan of the series" who pre-purchased a copy prior to its release. *Id.* ¶¶ 75, 76. Damion Perrine, the other named plaintiff, is

---

[1] The identity of the named plaintiffs has been a moving target in this action. The first amended class action complaint was filed on behalf of two plaintiffs, Damion Perrine and John Locke. Dkt. No. 26. Plaintiffs' counsel subsequently filed a Notice of Written Consent to File Second Amended Class Action Complaint (Dkt. No. 61) and contemporaneously filed a Second Amended Class Action Complaint (Dkt. No. 62). Plaintiffs' counsel eventually acknowledged to the Court, however, that he had not in fact obtained authorization to sign the consent on behalf of his client, Damion Perrine, who the second amended class action complaint drops from this case. Counsel's conduct caused the Court considerable concern, and the Court consequently struck both the Notice and the Second Amended Class Action Complaint. Dkt. No. 63. As a result, the first amended class action complaint remains the operative complaint and both Messrs. Perrine and Locke are named plaintiffs, but only Mr. Locke moves for class certification and seeks appointment as a class representative. Dkt. No. 95.

also a "fan of the Aliens franchise," and purchased a copy of the game on its release date, February 13, 2013. *Id*. ¶¶ 85, 94.[2]

The complaint alleges a "classic bait-and-switch." *Id*. ¶ 1. Plaintiffs allege that defendants developed a "non-retail but technically superior version" of the game that featured, among other things, "advanced artificial intelligence programming, certain gameplay sequences drawn from the Aliens movie," and "a highly advanced graphics engine (the 'Demo Engine')," and presented this version and described it to the public as "actual gameplay." *Id*. ¶¶ 23-24. The retail version that was ultimately sold, however, allegedly "utilized different programming altogether and a different -- and much less advanced -- graphics engine (the 'Retail Engine')." *Id*. ¶ 26. The complaint alleges that because of these differences, videogame industry critics expressed "disappointment and surprise" following the public release of the game, and that even Randy Pitchford, President of Gearbox, "acknowledged the discrepancy between the Aliens: Colonial Marines hands-off demo and the final game." *Id*. ¶¶ 62, 68. On this basis, the complaint asserts six claims for relief: (1) violation of the Consumer Legal Remedies Act, Cal. Civil Code § 1750 ("CLRA"); (2) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); (3) violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"); (4) breach of express warranties; (5) fraud in the inducement; and (6) negligent misrepresentation.

In his pending motion, Mr. Locke seeks certification of the following class against defendant Gearbox only:[3] "All persons in the United States who paid for a copy of the Aliens: Colonial Marines video game either on or before February 12, 2013." Dkt. No. 95 at 13; *see also* Dkt. No. 26 ¶ 101. Plaintiff alternatively proposed the certification of a more narrowed class at the hearing, which the Court will address.

---

[2] Mr. Perrine has filed a motion to dismiss claims and withdraw as class representative, Dkt. No. 69, but the Court has deferred ruling on that motion for reasons previously discussed with the parties. *See also* n.1, *supra*.

[3] Mr. Locke says the other defendant "Sega has agreed to settle the claims against it, and there is a pending motion to certify a class for settlement purposes with respect to Sega. (Dkt. 78.)." Dkt. No. 95 at 13 n.13.

2

At the class certification hearing, plaintiffs' counsel also sought the application of California law to a nationwide class under Gearbox's End User License Agreement ("EULA"). This stimulated Gearbox to file a motion to dismiss or, in the alternative, for judgment on the pleadings based on the arbitration clause and class action waiver contained in the EULA. Dkt. No. 130.

## DISCUSSION

### I. CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 governs plaintiff's motion for class certification. Under that rule, a party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Although not yet expressly recognized by the Ninth Circuit in a published opinion, the Court also regards as well-established and uncontroversial that "[i]n addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists." *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089 (N.D. Cal. 2011); *see also Martin v. Pacific Parking Sys. Inc.*, 583 Fed. Appx. 803 (9th Cir. 2014) (memorandum disposition affirming district court's order denying class certification "in part, because the proposed class was not ascertainable").

As an initial matter, the proposed class as framed by the complaint -- "all persons in the United States who paid for a copy of the Aliens: Colonial Marines video game either on or before February 12, 2013" -- is not certifiable. Of the three avenues offered by Rule 23(b), plaintiff seeks to satisfy Rule 23(b)(3). Dkt. No. 95 at 18. But at a minimum, common questions of fact would <u>not</u> predominate in the class as defined by the complaint; rather, individualized questions of reliance would. Plaintiff acknowledges this problem in his motion. *See id*. at 19 (recognizing "possible individual issue here [of] reliance"). And while it is true that "class members do not need to demonstrate individualized reliance" for plaintiff's claims under the UCL and FAL, even for those claims, a presumption of reliance "does not arise when class members 'were exposed to quite disparate information from various representatives of the defendant.'" *Mazza v. American*

*Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012). For the presumption to apply, everyone in the class must have been "exposed," meaning that "it is necessary for everyone in the class to have viewed the allegedly misleading advertising." *Id*. Plaintiff's original definition makes no attempt to limit the class to those who were "exposed" to the allegedly misleading advertising here, and consequently it is overbroad and not certifiable.

The obviousness of these principles is underscored by the fact that plaintiff rapidly retreated at the hearing to "limit the class to people who viewed an advertisement." Dkt. No.129 at 15:24-16:2. Plaintiff proposed to do this "by affidavit and claim form." *Id*. at 16:4-5. The Court directed the parties to submit supplemental briefs on this issue, namely "whether the Court can and should certify a class allowing class membership to be established by assertion of the class members by way of, *e.g.*, affidavits swearing that a consumer viewed a certain video or trailer prior to placing a pre-order for the game at issue." Dkt. No. 127.

The parties responded, Dkt. Nos. 133, 136, and the Court now concludes that the answer to its question is no. The problem with plaintiff's suggestion is that the revised class lacks ascertainability. Ascertainability is an important requirement because it "is needed for properly enforcing the preclusive effect of final judgment. The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss." *Xavier*, 787 F. Supp. 2d at 1089.

The factual record in the case shows why ascertainability is a pipe dream here. As the complaint acknowledges, this is not a case about a single misrepresentation. Rather, the non-retail version of the ACM game is alleged to have been presented to the public "through a *series* of 'actual gameplay' demonstrations." Dkt. No. 26 ¶ 27 (emphasis added). The first demonstration is alleged to have occurred "at the annual 'E3' conference in early June 2011." *Id*. ¶ 30. At the hearing, plaintiff explained that the ad campaign at issue "started at the E3 2011 conference and concluded . . . right before the release date [of the game in] February of 2013." Dkt. No. 129 at 27:23-25.

4

It is undisputed in the record that many trailers and commercials were released during that time period, primarily via the Internet but also through television. It is further undisputed that "several videos for ACM shown before the game's release contain footage from only the final retail version," rather than from the alleged "non-retail version." Dkt. No. 109 at 5. When pressed at the hearing to identify which specific videos or trailers included the allegedly problematic E3 2011 video or portions of it, plaintiff's counsel answered that he could not "say with certainty which ones" and that he "just [didn't] have the information." Dkt. No. 129 at 34:13-17. Counsel added, ineffectually, that it does not "matter that each and every video didn't have a specific scene from the 2011 reenactment," because the E3 2011 video "was accessible through this time period" and remains so today. *Id*. at 35:5-16. And Mr. Locke, the only named plaintiff moving for class certification and seeking appointment as a class representative, compounded the ascertainability problem by testifying in deposition that he could not "answer . . . with any degree of certainty" a question regarding which videos he saw before he preordered his copy of the game. Dkt. No. 133-3 at 67:5-10.

These facts distinguish this case from others in which self-identification through affidavits was found to be permissible, and places it in the camp of cases where such a proposal failed for lack of ascertainability. As was the case in *Xavier*, there is "no good way to identify" individuals who "have been exposed to Defendants' at-issue advertising before February 12, 2003 -- the day that all ACM preorders were made 'final.'" Dkt. No. 136 at 4. Putting aside the fact that plaintiff has failed to carry his burden of identifying which videos and trailers actually comprise defendants' "at-issue advertising" here, there is no good way to identify which purchasers viewed which videos prior to purchasing the game. Certainly, defendants have no records of who viewed what when, and plaintiff has not identified any document-based method of identifying this information. Instead, plaintiff's suggestion is to permit class members to self-identify through the submission of affidavits, but those affidavits would be highly unreliable and likely to embody the "subjective memory problem" that was found to exist in *Xavier*. As Judge Alsup noted in that case, "[s]wearing 'I smoked 146,000 Marlboro cigarettes' is categorically different from swearing 'I have been to Paris, France,' or 'I am Jewish,' or even 'I was within ten miles of the toxic

explosion on the day it happened," and the "memory problem is compounded by incentives individuals would have to associate with a successful class or dissociate from an unsuccessful one." 787 F. Supp. 2d at 1090.

The reality of this memory problem is beyond meaningful dispute. One of the two named plaintiffs here has already admitted under oath that he cannot identify "with any degree of certainty" which videos he saw before he placed his pre-order of the game at issue. The other named plaintiff, who no longer seeks to be a class representative but whose testimony is relevant nevertheless, also testified under oath that he could "not with certainty" remember all the videos he saw for Aliens: Colonial Marines. He further affirmed that there were "no records or no way for you to be able to recreate all of the different videos or demonstrations you may have seen for the game." Dkt. No. 133-4 at 84:11-19.

On this record, the Court finds that "persons who viewed an advertisement for ACM incorporating the Demoed Version," *see* Dkt. No. 116 at 7, cannot be identified through any reliable and manageable means, and that the proposed class lacks ascertainability. *See Xavier*, 787 F. Supp. 2d at 1091; *see also Astiana v. Ben & Jerry's Homemade, Inc.*, Case No. C 10-4387 PJH, 2014 WL 60097, at *3 (N.D. Cal. Jan. 7, 2014) (finding class insufficiently ascertainable where plaintiff "has provided no evidence as to which ice cream contained the allegedly 'synthetic ingredient'" and "has not shown that a means exists for identifying the alkali in every class member's ice cream purchases"). The Court also finds that plaintiff has failed to "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013).

The Court consequently denies plaintiff's motion for class certification on that basis, and finds it unnecessary to reach the questions of whether plaintiff has satisfied the other requirements of Rule 23.

**II. GEARBOX'S MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS**

One additional factor that bears mention is the requirement under Rule 23(b)(3), which plaintiff has invoked, that common questions of law predominate over individual ones. This

requirement, and plaintiff's efforts to meet it, set the stage for Gearbox's motion to dismiss or for judgment on the pleadings. Dkt. No. 130.

In its class certification opposition, Gearbox argued that no class could be certified because, pursuant to *Mazza*, 666 F.3d at 594, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place," and individualized legal questions would consequently predominate. Dkt. No. 109 at 17. In reply, plaintiff asserted that California law could be applied to all class members' claims on a nationwide basis under a California choice-of-law provision in "ACM's End User License Agreement." Dkt. No. 116 at 11. More specifically, plaintiff stated that he was standing on the choice-of-law clause in Sega's EULA, which he asserted is incorporated by reference by Gearbox's EULA, which he said governs his claim. *Id*. at 11 n.10.

Gearbox then brought the present motion under Federal Rules of Civil Procedure 12(b)(1) and 12(c) "on the grounds that the Gearbox's End Use License Agreement, which plaintiffs stipulated . . . governs the disposition of this case, bars plaintiffs from proceeding with a civil action against Gearbox and precludes the maintenance of a class action against Gearbox." Dkt. No. 130. Gearbox stakes its argument on the "mandatory arbitration provision and class action waiver" found in Gearbox's EULA. *Id*.

The Court finds, however, that this action does not fall under the scope of the binding arbitration and class action waiver provisions of the Gearbox EULA. As used in the EULA, "dispute" is defined to mean "any dispute, claim, demand, action, proceeding, or other controversy between you and Gearbox concerning the Licensed Works . . . ." Dkt. No. 130-3 § 9. Critically, the preamble of the EULA shows "Licensed Works" to be a defined term that refers to "the online features of Gearbox games and products." *Id.* ("In addition to the existing EULA terms applicable to the product and/or game, which are incorporated herein by reference, *those who utilize the online features of Gearbox games and products (the 'Licensed Works')*, including the online service known as 'Shift,' also acknowledge and accept the following terms of use") (emphasis added).

Gearbox's argument that "Licensed Works" actually means "Gearbox games and products" does not hold water. *See* Dkt. No. 2. The EULA show why. Under Section 1, License, "Gearbox may limit or prohibit access to the Licensed Works in its discretion." Dkt. No. 130-3. This makes sense only if "Licensed Works" means the online features, which Gearbox could presumably control access to via log-in credentials, IP addresses, and the like. It makes no sense at all if it refers to Gearbox games and products already purchased and in the living rooms of consumers. Gearbox definitely does not have the right to go into consumers' homes and remove their copies of ACM.

The Court finds "Licensed Works" to mean the "online features of Gearbox games and products." This case is not about those online features, and therefore the action does not fall within the scope of the binding arbitration provision or the class action waiver in the Gearbox EULA, both of which apply only to disputes "concerning the Licensed Works." Defendant Gearbox's motion for dismissal or for judgment on the pleadings is consequently denied.

## CONCLUSION

The Court denies plaintiff's motion for class certification (Dkt. No. 95) and defendant's motion for dismissal or judgment on the pleadings (Dkt. No. 130).

**IT IS SO ORDERED.**

Dated: May 12, 2015

_____
JAMES DONATO
United States District Judge